99 N.J. Super. 230 (1968)
239 A.2d 252
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
GEORGE RICHARD JACQUES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 2, 1968.
Decided February 16, 1968.
*233 Before Judges KILKENNY, CARTON and ROSEN.
Mr. Colin M. Dillon, assigned counsel, argued the cause for appellant.
Mr. Stanley J. Kaczorowski, Assistant Prosecutor, argued the cause for respondent (Mr. Leo Kaplowitz, Union County Prosecutor, attorney; Mr. Arthur J. Timins, on the brief).
The opinion of the court was delivered by ROSEN, J.S.C. (temporarily assigned).
Defendant appeals from a conviction by a Union County jury for armed robbery. The indictment was in two counts, the first charging defendant with the commission of a robbery (N.J.S. 2A:141-1) and the second with being armed in the perpetration of the robbery (N.J.S. 2A:151-5). Defendant was sentenced to a term of six to eight years for the robbery and a consecutive term of one to two years on the second count.
This was defendant's second trial on the same charges. After the first trial he was sentenced to three to five years for the robbery and a consecutive term of one to two years for *234 being armed. The original conviction was reversed on appeal and the matter was remanded for a new trial.[*]
The record discloses that on October 11, 1965 Peter Barrett was employed as a clerk by Lampert Dairy Farms in Rahway, New Jersey. At or about 7:45 or 7:50 P.M. he was in front of the store and noticed two men walk down the sidewalk, come toward the store and then turn a corner. Two or three minutes later they came back and headed toward the front door of the store. Barrett walked into the store and went behind the counter. The two men who were then in the store went over to the ice cream case, selected two ice cream cones and brought them to the counter. Barrett recorded the sale on the register. As he was opening the cash register drawer one of the two men pulled a gun from his waistband and told Barrett to give him the cash. The gun was described as "small, black, with a square barrel. It was automatic." In court Barrett identified defendant Jacques as the person who held the gun. Pursuant to defendant's demand Barrett took the money ($230) out of the cash register and turned it over to defendant, who then gave it to his accomplice. Defendant took $40 in change from Barrett and the two men backed out of the store.
Robert J. McClintock, who was indicted jointly with defendant for the same offenses, admitted his participation in the robbery. Apparently McClintock had known defendant for about six years. He did not recall who accompanied him in the criminal venture although he testified that he had not seen defendant on the day the robbery occurred.
Defendant denied his participation in the robbery. The defense was alibi. Defendant, his former girlfriend and her mother testified. This testimony, if believed, would demonstrate that defendant was at the home of his girlfriend from *235 approximately 7:15 P.M. until after 10 P.M. on the night of the robbery, whereas the robbery took place at or about 8 P.M.
Defendant contends that the trial judge committed prejudicial error by instructing the jury on the law of aiding and abetting in addition to the crime of robbery. The thrust of the argument is to the effect that there was no evidence in the record which would warrant any such instruction. This contention is devoid of merit.
N.J.S. 2A:85-14 provides that any one who "aids, abets, counsels, commands, induces or procures another to commit a crime is punishable as a principal." The distinction between principal and accomplice or aider and abettor has been abolished in our jurisdiction for purposes of indictment and punishment. State v. Western Union Telegraph Co., 12 N.J. 468, 494-495 (1953), appeal dismissed, 346 U.S. 869, 74 S.Ct. 124, 98 L.Ed. 379 (1953). This legal concept is defined in State v. Cooper, 10 N.J. 532 (1952),
"Under our law, all those who conspire to commit a crime and participate in some way in its commission are joint principals and each is as guilty as the person who actually commits the crime and is liable to the same punishment. They are indicted, in the language of the statute, as principals and are not accused of being accessories or aiders and abettors." (at p. 568)
The testimony demonstrates that defendant and another jointly participated in the commission of the armed robbery. Thus, each was an aider and abettor of the other. That defendant and his accomplice were walking together and entered the store at the same time, and that defendant handed part of the proceeds of the robbery to his accomplice were circumstances to be considered by the jury. The jury would have the right to determine whether defendant, at a particular time, was acting as an aider or abettor or as a principal. That the evidence may have served a double duty of supporting the charge of armed robbery by defendant as a principal as well as an aider and abettor is immaterial. The law of aiding and abetting states a rule of criminal responsibility *236 for acts which one assists another in performing. Defendant and his accomplice associated themselves with a criminal venture and participated in it with the express intention that it succeed. Nye & Nissen v. United States, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1948).
The answer to defendant's argument is summarized in State v. Woodworth, 121 N.J.L. 78 (Sup. Ct. 1938)
"* * * This classification of such aiders and abettors as principals is basic in our jurisprudence * * * The distinction thus sought to be made savors of mere legal sophistry tending to hamper the due course of justice in a field intimately identified with the public safety and welfare. Subtlety of distinction all too frequently frustrates essential justice. * * *" (at p. 84; emphasis added)
The trial court was correct in instructing the jury on aiding and abetting in the factual setting presented. In any event the reference to aiding and abetting did not prejudice defendant's substantial rights and was not reversible error. State v. Fiorello, 36 N.J. 80, 86 (1961), certiorari denied 368 U.S. 967, 82 S.Ct. 439, 7 L.Ed.2d 396 (1962); State v. Western Union Telegraph Co. supra, 12 N.J., at pp. 494-495.
Assigned counsel, at defendant's request, also presented the following grounds of appeal: (1) the verdict was the result of mistake or prejudice; (2) defendant was deprived of a fair trial because McClintock was called as a witness for the State, and (3) defendant was prejudiced and deprived of a fair trial "because McClintock's name was on the indictment since Robert J. McClintock knew the defendant and admitted his own guilt."
The guilty verdict returned by the jury was not the result of mistake or prejudice. This was a case of positive identification as against testimony tending to prove alibi. The jury accepted the positive identification rather than the alibi. Their conclusion is justified by the evidence.
Defendant was not deprived of a fair trial by the State producing McClintock as a witness. McClintock admitted his *237 guilt and testified only as to his own participation in the crime. McClintock's testimony, if anything, was favorable to defendant.
Lastly, defendant was not prejudiced and deprived of a fair trial because McClintock's name was on the indictment and the indictment was given to the jury during the course of their deliberation. The jury was instructed to scrutinize carefully McClintock's testimony because of his admission of guilt. The jury was further advised that the indictment was not evidence and that each person in the indictment was "entitled to have his guilt or innocence separately assessed on the evidence." We presume that the jury abided by the instruction of the court. As stated in Clark v. Piccillo, 75 N.J. Super. 123, 133 (App. Div. 1962), "There can be no assumption under our system of jurisprudence that the jury will disregard the instructions of the trial court." See State v. Cormier, 46 N.J. 494, 508 (1966). The language of the instruction was clear, understandable and unmistakeable.
Finally, we are asked to modify the sentences imposed on defendant at the second trial to sentences not greater than those imposed at the first trial. Defendant contends that the increased penalty imposed at the second trial is a violation of the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution.
The view that a defendant who has been once convicted of a crime should not, if he is convicted again of the same crime at a new trial, be subjected to a more severe punishment or sentence than was imposed at the prior trial, has gained recognition in some jurisdictions. State of Oregon v. Turner, 429 p.2d 565 (Sup. Ct. 1967) (robbery); State of Oregon v. Ramirez, 429 p.2d 572 (Sup Ct. 1967) (probation revocation proceedings) where the court observed that "in this case no evidence adverse to the defendant was presented at the second hearing that was not presented at the first."; People v. Henderson, 60 Cal.2d. 482, 35 Cal. Rptr. 77, 386 p.2d 677 (Sup. Ct. 1963) (murder); Application of Ferguson, 233 Cal. App.2d 79, 43 Cal. Rptr. 325 (App. Ct. *238 1965) (rape, second sentence for increased number of years). Our Supreme Court reached the same result in State v. Wolf, 46 N.J. 301 (1966) (murder), as did the California Supreme Court in People v. Henderson, supra, but on standards of procedural fairness rather than a constitutional basis. See, Van Alstyne, "In Gideon's Wake: Harsher Penalties and the `Successful' Criminal Appellant," 74 Yale L.J. 606 (1965). There is considerable authority to the contrary. Annotation, "Propriety of Increased Punishment on New Trial for Same Offense," 12 A.L.R.3d 978 (1967).
Three recent cases have considered the general problem. Marano v. United States, 374 F.2d 583 (1 Cir., 1967); United States ex rel. Starner v. Russell, 378 F.2d 808 (3 Cir. 1967) certiorari denied 389 U.S. 889, 88 S.Ct. 166, 19 L.Ed.2d 189 (1967), rehearing denied, 389 U.S. 997, 88 S.Ct. 488 (19 L.Ed.2d 501 (1967); Patton v. State of North Carolina, 256 F. Supp. 225 (W.D. NC. 1966) affirmed 381 F.2d 636 (4 Cir., 1967), certiorari denied, 390 U.S. 905, 88 S.Ct. 818, 19 L.Ed.2d 871 (1968).
In Marano defendant was convicted after remand for new trial in the United States District Court of Massachusetts of receiving stolen goods in interstate commerce. After the first trial he was sentenced to a three-year term, and after a new trial a five-year sentence was imposed. The same judge presided at trial and sentencing in both trials. It appears that there was additional or more damaging evidence at the retrial. The Circuit Court of Appeals held that defendant's right of appeal must be "unfettered" and concluded that the increased sentence based on additional testimony adduced at the retrial was improper. However, the court observed that in some circumstances it might not be "inappropriate for the court to take subsequent events [as disclosed in a new presentence report] into consideration, both good and bad." (374 F.2d, at p. 585).
In Starner defendant pleaded guilty to the commission of the crimes of forgery on eight counts and burglary on two counts as well as to two additional charges of driving a motor *239 vehicle after suspension of his operator's privileges. He was sentenced to imprisonment for not less than two or more than six years on the forgery and burglary counts, and on the motor vehicle charges sentence was suspended on the payment of costs. Starner then filed a petition for a writ of habeas corpus in the county court, alleging violation of his constitutional rights in that he was not represented by counsel. The sentences imposed on the felony and burglary charges were vacated. Thereafter he was indicted for the crimes of forgery and burglary and was released on bail pending trial. One month after being released on bail, he was again arrested on crimes committed since his release, which included 15 counts on the forgery and two counts on burglary. These charges were thereafter dismissed.
At the retrial of the original charges that had been vacated, the two counts of burglary were withdrawn from the case. The jury convicted Starner on all eight counts of forgery. He was thereafter sentenced to "undergo imprisonment for not less than three and one-half nor more than seven years, with credit to be given for time served on the same charge prior thereto less the time defendant was free on bail."
Starner again filed a petition for a writ of habeas corpus in the county court, alleging that the sentence imposed was unconstitutional in that it constituted cruel and harsh punishment since it was for fewer counts in the indictment than the previous indictment to which he had pled guilty and for which he had received a lesser sentence. His petition was denied. He appealed to the Supreme Court of Pennsylvania, which likewise refused to grant his application. Thereafter he filed a writ of habeas corpus in the United States District Court, raising many of the same contentions he had raised in the Pennsylvania court. The District Court adjudged that he was illegally detained and discharged him from custody. The county district attorney appealed to the Third Circuit Court of Appeals.
*240 The District Court's reasons for determining that the prisoner was illegally detained were predicated on its finding that the increased sentence was unconstitutional because of the "insufficiency" of the sentencing court's reasons for imposing a greater sentence on fewer counts at the trial than was given on Starner's earlier guilty plea. The Circuit Court disagreed:
"Undoubtedly, it would therefore seem to be the rule in the federal system that a trial judge, when a new trial is ordered, may impose a sentence greater than one he had earlier vacated, and that it is unnecessary to articulate the reason for any differentiation in the term of the sentence." (378 F.2d, at p. 811)
The court concluded,
"It is submitted it would be a flagrant trespass of an independent state judiciary, to question its discretionary judgment, in the imposition of a sentence, where the trial judge, in the possession of all the facts relative thereto, in a proceeding in a Federal court on a writ of habeas corpus  already ruled on by the highest tribunal of the state  would vacate the same, unless it clearly flouted constitutional standards of due process." (at p. 812; emphasis added)
In Patton defendant was sentenced to serve a term of 20 years in the state's prison on a plea of nolo contendere to the crime of armed robbery. His application for post-conviction relief was granted based upon the admitted fact that originally the court failed to appoint counsel to represent him although requested to do so. The plea was set aside and a new trial awarded. Thereafter, represented by counsel, defendant entered a plea of not guilty. He was tried and convicted. On this conviction he received the identical sentence, i.e., 20 years imprisonment, that he had recevied on the original plea. The state judge denied defendant credit for time served while in de facto status of a State prisoner under the original sentence imposed. Defendant brought a habeas corpus proceeding in the United States District Court. That court said, "It is not a crime in America for one to insist upon his constitutional rights, and no person may constitutionally be *241 punished for doing so." 256 F. Supp., supra, at p. 232. The court further held that the failure to give defendant credit for time spent under the invalid first sentence was a denial of his constitutional rights. However, it differentiated a record disclosing no "colorable reason for harsher punishment" from one disclosing a discernible reason for the increased punishment. In the latter situation increased punishment may "constitutionally be imposed at a second trial." In the former the imposition of a more severe sentence is so fundamentally unfair as to violate the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution. Ibid., at p. 236.
Patton was affirmed in the Fourth Circuit Court of Appeals. However, that court disagreed with the reasons advanced by the District Court in support of its conclusion. The court held that,
"In order to prevent abuses, the fixed policy must necessarily be that the new sentence shall not exceed the old. Seldom will this policy result in inadequate punishment. Against the rare possibility of inadequacy, greater weight must be given to the danger inherent in a system permitting stiffer sentences on retrial  that the added punishment was in reaction to the defendant's temerity in attacking the original conviction. Even the appearance of improper motivation is a disservice to the administration of justice."
The court reviewed and agreed with the holding in Marano, but rejected the view that in "some circumstances" the court could constitutionally increase the sentence after the second trial. The contra conclusion in Starner, supra, was noted without comment.
The conclusions of law in Patton and Starner are in apparent conflict. In both cases the United States Supreme Court denied petitions for a writ of certiorari. We note that a denial of such a petition "imports no expression of opinion upon the merits of the case. * * * [B]y denying leave for review * * * of a lower court decision this Court lends no support to the decision of the lower court. Obviously it does not imply approval of anything that may have been *242 said by the lower court in support of its decision." Agoston v. Commonwealth of Pennsylvania, 340 U.S. 844, 71 S.Ct. 9, 95 L.Ed. 619 (1950).
At oral argument counsel agreed that the probation reports which were available to the first and second sentencing trial judges be submitted and considered by this court. This has been done. The probation reports disclose, among other things, that subsequent to the first sentencing defendant was under charges of breaking, entering and larceny and armed robbery in Middlesex County. The record shows that on May 11, 1967 he was convicted by a jury for the crime of breaking and entering with intent to steal. On May 24, 1967 defendant was convicted of armed robbery. He was sentenced on August 21, 1967.
On June 9, 1967, when defendant was sentenced on the armed robbery charge in Union County, Judge Barger was aware that defendant was to be sentenced in Middlesex County for the crimes of which he was found guilty. He was given full credit for time spent in official confinement. The presentence reports and transcript of sentence proceedings disclose a background of defendant's lawlessness. Undoubtedly the experienced trial judge considered the convictions in Middlesex County in light of defendant's criminal background and determined that the public safety and welfare required the new sentences.
In Marano, Patton and Starner there were no intervening convictions of crimes between the dates of the first and second sentences, which is the fact here. We take the view that our decision should "find its base in procedural policies which are of the essence of the administration of criminal justice." State v. Wolf, supra. We conclude that when a second sentencing judge is presented with information of facts which occurred subsequent to the first sentencing, there is justification in law to permit the court to assess its sentence upon the more complete and current information.
Our holding here relates solely to the factual situation presented. We have examined the record and are satisfied *243 that the imposition of the more severe sentences rested on a substantial and not an arbitrary basis. The reason for the sentences does not violate procedural policies or "standards consistent with the just administration of the criminal law."
The sentences imposed upon defendant were well within the statutory limits established by the Legislature for the offenses involved and were not an improper exercise of discretion. State v. Hodgson, 44 N.J. 151, 164 (1965), State v. Tyson, 43 N.J. 411, 417 (1964).
Affirmed.
NOTES
[*] In an unreported opinion decided November 30, 1966 (Docket No. 921-65) this court reversed defendant's conviction on the ground that the County Court's order denying defendant's motion to suppress evidence was error in that his constitutional rights had been violated by an improper search.