STATE OF NORTH CAROLINA v. JAMES ALLEN STAFFORD
No. 495

(Filed 9 December 1968)

**1. Criminal Law § 138— severity of sentence on retrial — credit for prior sentence**

When a sentence is set aside and a new trial ordered upon defendant's application on appeal or in post-conviction proceedings, the whole case is tried de novo and the former judgment does not fix the maximum punishment which may be imposed after a second conviction; the total of the time served under the two sentences, however, may not exceed the maximum sentence authorized by the applicable statute, and on any subsequent sentence imposed for the same conduct, a defendant must be given full credit for all time served under the previous sentence.

**2. Criminal Law § 150— right of defendant to appeal**

No person should ever be penalized for exercising a constitutional right or his right of appeal, but not every auxiliary consequence unfavorable to a prisoner who has succeeded in vacating a sentence can be classified as a penalty.

**3. Criminal Law § 150— right of unfettered appeal**

In this State an aggrieved party has the absolute and unfettered right to appeal, and the Supreme Court has been alert to protect this right.

**4. Criminal Law § 138— procedure in imposition of sentence — evidence**

In determining sentence to be imposed, any evidence bearing upon a defendant's conduct, character, and propensities should be considered whether the court hears it during the trial or reads it in a presentence report.

**5. Criminal Law § 158— presumption of judge's impartiality**

There is a presumption that a judge will act fairly, reasonably and impartially in the performance of the duties of his office.

**6. Criminal Law § 138— increased punishment upon retrial — validity**

Upon the retrial and conviction of an accused whose earlier conviction for the same offense was set aside upon appeal or in post-conviction proceedings because of a constitutional defect in the first trial, the trial court may impose a sentence severer than the one vacated, unless it affirmatively appears that the second sentence has been increased to penalize a defendant for exercising rights accorded him by the constitution, a statute, or judicial decision.

**7. Criminal Law § 158— presumption that judge acted fairly — burden of proof**

A defendant has the burden to overcome the presumption that trial judge acted with the proper motive and did not violate his oath of office.

**8. Criminal Law § 138— increased punishment upon retrial — necessity for explanation**

Where the trial judge imposes severer sentence on retrial than the one

vacated, it is unnecessary for him to articulate the reason for any differentiation in the term of the sentence, although there is no objection to his placing in the record the basis for his action.

**9. Criminal Law § 26;    Constitutional Law § 37— waiver of protection against retrial**

When a defendant seeks a new trial by appealing his conviction. he waives his protection against reprosecution.

**10. Criminal Law §§ 26, 138— double jeopardy — increased punishment on retrial**

The Fifth Amendment protection against double jeopardy has no application to increased punishment in a second trial resulting from defendant's successful attack upon his first conviction. U. S. Constitution, Amendment V.

**11. Criminal Law §§ 4, 26— element of offense — punishment**

Punishment is not an ingredient of the offense.

**12. Criminal Law §§ 26, 138— validity of retrial and resentencing**

Under the Fifth Amendment the only persons who can ever be retried or resentenced are those whose first sentences have been imposed under valid statutes and have been vacated at their request. U. S. Constitution, Amendment V.

**13. Criminal Law §§ 150, 181— post-conviction alternatives**

A convicted defendant has the right to appeal and to assert alleged violations of his constitutional rights in post-conviction proceedings, or he has the right to accept the sentence pronounced and rely upon the constitutional provision which protects him from double jeopardy.

**14. Criminal Law § 138;    Constitutional Law § 20— equal protection — risk of increased punishment on retrial**

A prisoner who has accepted his sentence is not in the same classification as one who has sought and obtained a second trial and, the two classes being dissimilar, it is not reasonable to claim a violation of the equal protection clause because all those who are tried de novo assume the risk of an increased sentence at the second trial while those who never attack their sentences do not.

**15. Constitutional Law § 20— equal protection**

It is fundamental that once a right or privilege is granted it must be applied equally and indiscriminately, but when a law applies uniformly to all members of the class affected — and the classification is based on a reasonable distinction — equal protection of the laws has not been denied.

**16. Constitutional Law § 20— equal protection**

The Constitution does not require that the same rules apply to incompatible classes.

**17. Criminal Law § 138— consolidation for judgment of two or more counts — excessive sentence**

Trial court may consolidate for judgment two or more counts charging

distinct offenses and pronounce one sentence, but the court is not authorized to enter a judgment in gross in excess of the greatest statutory penalty applicable to any of the counts.

REVIEW upon certiorari of order, entered 21 November 1966 by *Mallard, J.,* dismissing petitioner's application for a writ of habeas corpus and post-conviction review under G.S. 15-217 *et seq.*

At the July 1953 Session of the Superior Court of Wake, defendant pled guilty to charges of feloniously breaking and entering the building occupied by Brawley Jewelry Company of Raleigh and of stealing and carrying away therefrom watches valued at $5,400.50. The two counts were consolidated for judgment, and defendant received a sentence of "not less than ten years nor more than eighteen years" in the State's prison. He escaped from prison on 7 December 1953, but was apprehended in Ohio and returned on 25 November 1964.

Thereafter, under G.S. 15-217 *et seq.,* defendant petitioned the Superior Court to vacate his sentence because he was not represented by counsel at the time he entered his plea of guilty. Judge C. W. Hall allowed his petition, set aside his plea and sentence, and ordered a trial de novo. Upon retrial at the November 1965 Session, defendant entered a plea of not guilty. The State offered evidence before the jury; defendant did not. The verdict was "guilty of breaking and entering as charged and guilty of larceny as charged." Upon the count of breaking and entering, the judgment was that defendant be imprisoned for not less than seven nor more than ten years; upon the count of larceny, for not less than six nor more than eight years, this sentence to begin at the expiration of the one imposed on the first count. The court ordered that defendant be credited with all time served prior to 11 October 1965 in execution of the sentence imposed at the July 1953 term.

Defendant appealed to this Court, assigning as error the admission in evidence of his confession and the failure of the court to allow his motion of nonsuit. We found no error in the trial. *State v. Stafford,* 267 N.C. 201, 147 S.E. 2d 925 (filed 4 May 1966).

On 21 November 1966, defendant addressed to Honorable Raymond B. Mallard, the judge then presiding over the Superior Court of Wake County, the last of several petitions for his release or post-conviction review of his trial. He averred (1) that he had been awarded and subjected to a new trial over his vigorous protest, and (2) that the sentence which he received at the second trial was illegal because it exceeded by three years the sentence at the first,

trial. Judge Mallard found — as the record conclusively establishes — that the new trial had been awarded at defendant's insistence and after Judge Hall had fully explained to him "the risk incident thereto." Judge Mallard found defendant's petition to be without merit and denied his application.

On 22 June 1967 defendant filed with this Court a petition for certiorari in which he asserted that a sentence in excess of the one received at his first trial could not constitutionally be imposed at the second trial. Certiorari was allowed.

*T. W. Bruton, Attorney General, and Dale Shepherd, Staff Attorney, for the State.*

*Hatch, Little, Bunn & Jones by Frank R. Liggett, III, for petitioner-appellant.*

SHARP, J.

Defendant's appeal presents for our reconsideration this question: Upon the retrial and conviction of an accused whose earlier conviction for the same offense was set aside upon appeal or in postconviction proceedings because of a constitutional defect in the first trial, may the court impose a sentence severer than the one vacated?

[1] The decisions of this Court have established the following rules for this jurisdiction: When, upon defendant's application, a sentence is set aside and a new trial ordered, the whole case is tried de novo. The former judgment, therefore, does not fix the maximum punishment which may be imposed after a second conviction. *State v. Pearce,* 268 N.C. 707, 151 S.E. 2d 571; *State v. Slade,* 264 N.C. 70, 140 S.E. 2d 723; *State v. Merritt,* 264 N.C. 716, 142 S.E. 2d 687; *State v. White,* 262 N.C. 52, 136 S.E. 2d 205, *cert. denied,* 379 U.S. 1005 (1965). The total of the time served under the two sentences, however, may not exceed the maximum sentence authorized by the applicable statute. *State v. Foster,* 271 N.C. 727, 157 S.E. 2d 542; *Williams v. State,* 269 N.C. 301, 152 S.E. 2d 111; *State v. Weaver,* 264 N.C. 681, 142 S.E. 2d 633; *State v. Slade, supra.* Furthermore, on *any* subsequent sentence imposed for the same conduct, a defendant must be given full credit for all time served under the previous sentence. *State v. Paige,* 272 N.C. 417, 158 S.E. 2d 522; *State v. Weaver, supra. Accord, Lewis v. Commonwealth,* 329 Mass. 445, 108 N.E. 2d 922, 35 A.L.R. 2d 1277 (1952). See *King v. United States,* 69 App. D. C. 10, 98 F. 2d 291 (D. C. Cir. 1938); Annot., 35 A.L.R. 2d 1283, 1288 (1954).

The North Carolina rule that upon retrial the court hears the case as if it were being tried for the first time and may impose an increased sentence is in accord with the weight of authority. In Annot., 12 A.L.R. 3d 978, 979-80 (1967) (wherein the cases on this point are collected), it is said: "The majority of courts which have been faced with the issue have held or indicated that it is permissible, both in cases involving capital offenses and in those involving lesser offenses, to impose upon a defendant convicted at a new trial of the same crime of which he was previously convicted a more severe punishment than was imposed upon his earlier conviction." *Accord,* 24 C.J.S. *Criminal Law* § 1426 (1961); 66 C.J.S. *New Trial* § 226 (1950); 39 Am. Jur. *New Trial* § 217 (1942).

To the question whether, upon a retrial, the defendant may be given an increased sentence, other courts have given five different answers:

1. Severer sentences are permissible and will be upheld unless they clearly flout constitutional standards of due process, and the judge need not articulate the reason for the differentiation in the sentence. *United States ex rel. Starner v. Russell,* 378 F. 2d 808 (3d Cir. 1967), *reh. denied* 389 U.S. 889 (1967); *United States v. Fairhurst,* 388 F. 2d 825 (3d Cir. 1968), *cert. denied,* 392 U.S. 912; *United States v. Saunders,* 272 F. Supp. 245 (E.D. Cal. 1967); *Hobbs v. State,* 231 Md. 533, 191 A. 2d 238 (1962), *cert. denied* 375 U.S. 914 (1963); *King v. United States, supra; Sanders v. State,* 239 Miss. 874, 125 So. 2d 923, 85 A.L.R. 2d 481 (1961); *State v. Young,* 200 Kan. 20, 434 P. 2d 820 (1967). (In *Newman v. Rodriquez,* 375 F. 2d 712 (10th Cir. 1967), it was held that upon reconviction after a new trial the state of New Mexico was not required to give credit for time served on a void sentence for the same offense.)

2. Increased sentences are absolutely prohibited. *Patton v. North Carolina,* 381 F. 2d 636 (4th Cir. 1967), *cert. denied* 390 U.S. 905 (1968); *State v. Turner,* 429 P. 2d 565 (Ore. 1967). See also *Walsh v. United States,* 374 F. 2d 421 (9th Cir. 1967) (Sentence imposed in absence of defendant, although erroneous and vacated, fixed maximum penalty.) *People v. Ali,* 66 Cal. 2d 277, 57 Cal. Rptr. 348, 424 P. 2d 932 (1957).

3. Increased sentences are prohibited *unless* events warranting an increased penalty occur and come to the court's attention subsequent to the first sentence, and are made affirmatively to appear. *Marano v. United States,* 374 F. 2d 583 (1st Cir. 1967).

4. Increased sentences are permitted when the record affirmatively shows that the judge is not penalizing the defendant for

having exercised his right to have his first sentence vacated. *United States v. White,* 382 F. 2d 445 (7th Cir. 1967), *cert. denied* 389 U.S. 1052 (1968); *Rice v. Simpson,* 274 F. Supp. 116 (M. D. Ala. 1967); *Coke v. United States,* 280 F. Supp. 97 (S. D. N. Y. 1968); *State v. Leonard,* 39 Wis. 2d 461, 159 N.W. 2d 577 (1968); *State v. Jacques,* 99 N. J. Super. 230, 239 A. 2d 252 (1968).

5. After a defendant has been tried and *convicted* of murder in the first degree (or other capital crime), with a recommendation of life imprisonment, upon a retrial the prosecution may not seek the death penalty. The rationale is that the "price of an appeal from an erroneous conviction" may not be "set at risk of a man's life." *State v. Wolf,* 46 N.J. 301, 216 A. 2d 586, 12 A.L.R. 3d 970 (1966). The rule enunciated in *Wolf* was not made applicable to a sentence imposed upon a plea of *non vult,* since upon such a plea the defendant could not have been sentenced to death, nor was it applied to a resentence for robbery in *State v. Jacques, supra.* See *Beardslee v. United States,* 387 F. 2d 280, 297 (8th Cir. 1967), in which the court recognized the potential problem when it granted a new trial to a defendant convicted of murder in the first degree "without capital punishment."

The foregoing classification reveals the recent conflict between the federal circuits which have considered the question here involved. See *Jack v. United States,* 387 F. 2d 471, 474 (9th Cir. 1967); *United States v. White, supra* at 448; *Moon v. State,* 1 Md. App. 569, 571, 232 Atl. 2d 272, 278 (1967). The divergence between our views and those of the Court of Appeals for the Fourth Circuit, by whose decisions all federal district courts in North Carolina are bound, has put the utmost stress upon the "delicate balance of federal-state relations." We have, therefore, decided to re-examine the reasoning which has shaped our conflicting views.

The grounds upon which it is asserted that at any subsequent trial for the same offense a defendant cannot be sentenced to a longer term of imprisonment than he received upon his first conviction are these: (1) The risk of a greater sentence "chills" meritorious appeals as well as frivolous ones. It imposes an unreasonable and a fundamentally unfair condition upon a defendant's right to attack his conviction, which deprives him of due process of law. (2) An increased sentence deprives the successful movant or appellant of the equal protection of the laws. (3) An increased sentence is inconsistent with the constitutional prohibition against double jeopardy. The gist of the arguments supporting these hypotheses are set out in *Marano v. United States, supra; Patton v. North Carolina,*

*supra;* and *State v. Turner, supra.* See also Van Alstyne, In Gideon's Wake, 74 Yale L. J. 606 (1965).

### DUE PROCESS

The rationale of the due process claim is stated in *Coke v. United States, supra,* as follows: In essence it "rests upon the suggested rejection of the theory that in appealing a criminal conviction a defendant consents to proceedings de novo, including resentence if the original judgment is vacated and a new trial ordered. This legal fiction is said to impose an unconstitutional condition upon the right of appeal, putting defendants to a 'grisly choice' . . . either appealing a conviction rendered upon proceedings constitutionally unfair and risking harsher punishment, or abandoning that right and serving a prison term under a sentence invalid in all but name."

In considering whether an increased sentence deprived a defendant of due process of law two fundamental principles must be weighed: (1) the right of every person convicted of crime to exercise his constitutional rights and to appeal his conviction and sentence without fear of reprisals, and (2) the right of every trial judge to remain in control of the case he is trying and to exercise his own judicial discretion freely. The first protects individual rights; the second, the freedom, integrity, and favorable repute of the judicial branch of the government. In our view, these rights are mutually dependent.

[2, 3] It goes without saying that no person should ever be penalized for exercising a constitutional right or his right of appeal. Not every auxiliary consequence unfavorable to a prisoner who has succeeded in vacating a sentence, however, can be classified as a penalty. In North Carolina, an aggrieved party has the absolute and unfettered right to appeal, and this Court has been alert to protect this right. In *State v. Arthur Patton, Jr.,* 221 N.C. 117, 19 S.E. 2d 142, the record disclosed that when the defendant gave notice of appeal from a fine of $25.00, the trial judge struck that judgment and imposed a prison sentence of ninety days. In remanding the case for resentence, Devin, J. (later C.J.), said: "[I]t seems here, under the circumstances described in the record, the action of the judge was induced by the defendant's expression of his intention to appeal. This tended to impose a penalty upon the defendant's right of appeal and to affect the exercise of his right to do so. . . . This right ought not to be denied or abridged, nor should the attempt to exercise this right impose upon the defendant an additional penalty or the enlargement of his sentence." *Id.* at 119, 19 S.E. 2d at 143-44.

In *Marano v. United States, supra,* the defendant was convicted in the Federal District Court of receiving stolen goods and given a three-year sentence. The Court of Appeals ordered a new trial, and Marano was again convicted. As a result of the additional testimony produced at the second trial *and* his evaluation of the new presentence report, the same judge — *expressly* disclaiming that he was penalizing defendant for having appealed — imposed a sentence of five years. In remanding for resentence the Court of Appeals said: A defendant "should not have to fear even the possibility that his exercise of his right to appeal will result in the imposition of a direct penalty for so doing," and, on the question of punishment, the trial judge had no right to consider the additional evidence at the second trial. "The danger that the government may succeed in obtaining more damaging evidence on a retrial is just as real as the danger, for example, that the judge on his own may wish to reconsider, unfavorably to the defendant, the factors which led to his original disposition. We think there must be repose not merely as to the severity of the court's view, but as to the severity of the crime." *Id.* at 585. However, the court recognized a *new* presentence report as an exception to the rule and said that it would not be "inappropriate for the court to take subsequent events into consideration both good and bad." Notwithstanding, since the judge considered both the report *and* the additional evidence, the five-year sentence was vacated.

**[4]** It seems to us that any evidence bearing upon a defendant's conduct, character, and propensities should be considered whether the court hears it during the trial or reads it in a presentence report. The idea that a defendant should be "protected" from the hazard that, between a first and second trial, the prosecution might obtain additional evidence which would augment his crime and disclose criminal tendencies revealing him to be a greater threat to society than the judge had reason to suspect at the first trial is one which we cannot assimilate. It may be that in *Marano* the court thought the district judge had protested too much and that he had, in fact, punished the defendant for insisting upon a second trial which produced the same verdict. Even so, its sweeping prohibition far exceeded the requirements of the case. For its statement that "there must be repose not merely as to the severity of the court's view, but as to the severity of the crime," it cited no authority but suggested by way of a *"Cf."* that *Green v. United States,* 355 U.S. 184, 78 S. Ct. 221, 2 L. Ed. 2d 199, 61 A.L.R. 2d 119 (1957), was sufficiently analogous to lend some support to its statement.

The 5-4 decision in *Green* was that, upon the defendant's trial for first-degree murder, the jury's verdict finding him guilty of sec-

ond-degree murder was an implied acquittal of the charge of first-degree murder and that to retry him for that offense would be to place him twice in jeopardy. Thus, *Green* dealt with the right of the government again to prosecute the defendant for a crime of which he had been acquitted. It was directed at the offense itself; it does not bear upon the matter of punishment. It did not decide whether, had the defendant again been convicted of second-degree murder, the court could have imposed a longer sentence than the one from which he appealed.

Implicit in the decisions of the courts which deny the second trial judge his traditional authority to pass judgment in the light of the most complete and current information available is the belief that courts, with retributive motive, will likely impose an increased sentence after a second trial.

In *Patton v. North Carolina,* 256 F. Supp. 225 (W.D.N.C. 1966), Craven, Circuit Judge, said that "the heart of the question" is "the motivation of the second judge." He held that Patton's punishment could not be increased unless evidence justifying a harsher sentence appeared in the record and that the burden was upon the state to introduce such evidence. When the State of North Carolina appealed, a three-judge panel of the Fourth Circuit Court of Appeals (Sobeloff, Bell, and Winter, JJ.) held that "a sentence may not be increased following a successful appeal, even where additional testimony has been introduced." Sobeloff, Circuit Judge, stated the reason bluntly: "In order to prevent abuses, the fixed policy must necessarily be that the new sentence shall not exceed the old." *Patton v. North Carolina* (4th Cir.), *supra* at 641.

The opinion of Ganey, Circuit Judge, in *United States ex rel. Starner v. Russell, supra,* evidenced an entirely different philosophy:

"[W]e cannot properly speculate that the court certainly will increase the sentence, after a new trial. To so hold would seem to trespass the integrity of the trial judge who, upon hearing all the evidence, with the whole panorama of defendant's crime laid out before him, conscientiously passes sentence in accordance therewith, even though here the defendant did not take the stand nor call witnesses on his behalf. The sentence thus imposed by the trial judge cannot, in any sense, be said to be for his appealing, unless we again attribute to him a base motive — penalizing him for his appeal, conduct unworthy of the name of judge — rather than for his weighing and evaluating the measure of defendant's crime and passing sentence thereon, in the light of the wider, factual area encompassed by the trial which, in most instances, is far more revealing than those

factual elements taken into consideration in the imposition of sentence upon a plea of guilty.

\* \* \*

"It is submitted it would be a flagrant trespass of an independent state judiciary, to question its discretionary judgment, in the imposition of a sentence, where the trial judge, in the possession of all the facts relative thereto, in a proceeding in a Federal court on a writ of habeas corpus — already ruled on by the highest tribunal of the state — would vacate the same, unless it clearly flouted constitutional standards of due process." Id. at 811-12.

**[5]** Historically, the presumption has been that a judge will act fairly, reasonably, and impartially in the performance of the duties of his. office, *State v. Young, supra.* Our entire judicial system is based upon the faith that a judge will keep his oath. "Unless the contrary is made to appear, it will be presumed that judicial acts and duties have been duly and regularly performed." 1 N. C. Index 2d, Appeal and Error §' 46 (1967). Since, however, *all* judges are human, from time to time one or more will err. Notwithstanding, we have no choice but to make men judges. Judge Curtis Bok, in his book, *I Too Nicodemus,* said that the real crime of criminals was that they "have made it necessary to judge them and have so tarnished those who do it." So long as errants make it necessary for other men to judge them it is best to indulge the presumption that a judge will do what a judge ought to do. Actually we have no other choice. Furthermore, men seek to justify the confidence they believe to be reposed in them.

It would demean the entire judiciary for the appellate branch to assume that trial judges — who bear the brunt of the administration of justice and from whose ranks so many ascend to courts of last resort — will penalize with "harsher" sentences one who appeals or exercises a constitutional right which entitles him to a new trial. In our lexicon a sentence is harsh only when it exceeds merited punishment.

It may be conceded that every defendant who gets a stiffer sentence upon a retrial will .impugn the motives of the judge who imposed it and charge that the increase was vindictive punishment for his successful attack of his first conviction. This will be especially true when the same judge conducts both trials. See *United States v. Saunders, supra.* For this reason we may doubt that judges will be inclined to increase sentences unless the record discloses that the public interest so requires. The irresponsible and callous charges of malfeasance which prisoners today routinely make against the judges

who presided at the trials at which they were convicted, or who denied them relief in post-conviction proceedings, are bruising to the spirit of any sensitive and concientious judge.

In *Coke v. United States, supra,* the petitioner alleged that the increase in his second-trial sentence "was to punish him for having appealed and as a threat to deter others in the exercise of that right." The reviewing judge found this charge "fully and conclusively contradicted by the entire sentencing proceeding." At the time of the defendant's first sentencing, the judge had no presentence report; the defendant had remained silent while his counsel made misrepresentations to the court; the presentence report available to the second judge revealed the extent of the defendant's irresponsibility and depravity.

In *United States v. Saunders, supra,* after his rights were fully explained to him and he had elected to waive counsel and indictment, the defendant pled guilty to bank robbery and received a sentence of fifteen years. Eleven months later, in post-conviction proceedings, he alleged that he had been denied counsel at the time he pled guilty. The record belied this accusation; the petition was denied, and defendant did not appeal. Eight months thereafter, in another petition he averred that he was under the influence of drugs at the time of his "trial and sentence." His sentence was vacated, and he was tried upon a plea of not guilty. The defendant testified. He "had obviously fabricated his defense and testified falsely." Evidence for the government was that the drug which the defendant had taken was so mild it could have been given to a child and could not possibly have affected the defendant's understanding or conduct. The jury promptly found the defendant guilty as charged in the indictment. The court secured a new presentence report, which showed the defendant to have "regressed" since his first trial. This time the same judge imposed a sentence of twenty years.

The above cases — two out of many — point up the problems which confront second-trial judges and the abuse to which courts will be subjected with impunity if they are shackled by a rule forbidding increased sentences at a second trial. The incentive to perjury is manifest, for prisoners would certainly conclude that they had nothing to lose by seeking and obtaining the second trial — which would be furnished at public expense.

A rule that a new sentence can never exceed the old could cause such disparity in punishment at the same term of court as to create a festering sense of injustice in a prisoner and confuse the public. We can envision a situation in which the judge feels that two de-

fendants, separately convicted of unrelated felonies of similar gravity, should each have a sentence of ten years. Defendant *A* was tried for the first time; defendant *B*, however, was "retried" because his plea of guilty, and the 5-10-year sentence imposed at his first trial, had been set aside in post-conviction proceedings. Should the judge sooner release *A* upon society because he could not longer restrain *B?*

When, at a prisoner's request his sentence is vacated and a new trial ordered, all courts agree that the second trial is de novo upon the issue of guilt or innocence. Because the evidence upon which the State relied at the first trial may no longer be available, because the defendant may have additional evidence, or for other reasons, the second-trial verdict may be not guilty or guilty of a lesser degree of the crime charged. On the other hand, the State may have acquired additional evidence which sheds a harsher light upon the degree and quality of defendant's conduct.

In post-conviction proceedings prisoners frequently seek to upset sentences which were imposed upon their plea of guilty. Charges that misunderstanding, coercion, or unauthorized plea-bargaining produced the plea are hard to disprove. Trial judges, considering a plea of guilty as an indication that the defendant has "already entered on the rehabilitative process, that he is purging himself thereby of his wrongdoing, and . . . that a sense of contrition therefor must have motivated his conduct," customarily extend greater leniency than when the defendant goes to trial. *United States ex rel. Starner v. Russell, supra* at 811. Furthermore, with no need to develop the case fully in order to prove defendant's guilt, in many cases the prosecuting attorney does not produce all the available evidence. In those instances, the first sentencing judge does not have the opportunity to consider fully the circumstances and details of the offense or to weigh "important, intangible factors which play a vital role in the determination of a sentence," which came to the attention of the second judge. *Shear v. Boles,* 263 F. Supp. 855, 860 (W. D. W. Va. 1967), *decision reversed* 391 F. 2d 609 (4th Cir. 1967).

"Frequently, the defendant does not testify at the first trial but takes the stand at the second when upon cross examination, and for the first time, there is developed his iniquitous deportment of an alarming nature. Another face comes to light. Should the first sentence gag the second judge from meting out a sentence appropriate and warranted in view of new, pertinent factors?" *Coke v. United States, supra* at 104.

Until recently, it was the general rule that a trial de novo meant a sentence de novo. Annot., 12 A.L.R. 3d 978 (1967); 24 C.J.S. *Criminal Law* § 1426 (1961). Should the judge's appraisal of the evidence at the second trial lead him to impose a lighter sentence no one suggests that the first sentence is a basement. By the same token it should not be a ceiling if, in the light of current information, he deems an increased sentence necessary to protect the community from a person of proven anti-social and criminal tendencies and to provide for a longer period of rehabilitation. The judge can perform his judicial function only if he is left free to impose the sentence he deems appropriate at the time.

**[6-8]**    Weighing against the hazards which accompany a flat prohibition of increased sentences, the danger that on a second trial the judge will vindictively punish a prisoner for asserting his rights, we are of the considered opinion that the likelihood of judicial malfeasance is the lesser danger. We hold, therefore, that unless it affirmatively appears that a second sentence has been increased to penalize a defendant for exercising rights accorded him by the constitution, a statute, or judicial decision, a longer sentence does not impose an unreasonable condition upon the exercise of those rights nor does it deprive him of due process. The presumption is that the judge has acted with the proper motive and that he has not violated his oath of office. The burden is on the prisoner to overcome that presumption. We agree with the statement in *United States ex rel. Starner v. Russell, supra* at 811 (quoted with approval in *United States v. White, supra* at 449-50), that when a new trial is ordered the judge "may impose a sentence greater than one he had earlier vacated, and . . . it is unnecessary to articulate the reason for any differentiation in the term of the sentence." There is, however, no objection to his placing in the record the basis for his action, for this will inform the prisoner and aid the judge at the post-conviction hearing.

## DOUBLE JEOPARDY

**[9, 10]**    The double-jeopardy exegesis is that the constitutional prohibition prevents not only a reprosecution for the same offense after an acquittal but also any increased punishment in a second trial resulting from the defendant's successful attack upon his first conviction; that when a defendant is first sentenced he is "impliedly acquitted of any higher penalty" and on retrial he can "only be given up to the degree of punishment of which he was originally convicted." *Patton v. North Carolina* (4th Cir.), *supra* at 645. All courts agree that when a defendant seeks a new trial by appealing his conviction he waives his protection against reprosecution. "[I]t

is quite clear that a defendant, who procures a judgment against him upon an indictment to be set aside, may be tried anew upon the same indictment, or upon another indictment, for the same offense of which he had been convicted." *Ball v. United States*, 163 U.S. 662, 672, 16 S. Ct. 1192, 1195, 41 L. Ed. 300, 303 (1896).

In *Stroud v. United States*, 251 U.S. 15, 40 S. Ct. 50, 64 L. Ed. 103 (1919), *reh. denied* 251 U.S. 380 (1920), the defendant was convicted by a jury of murder in the first degree "without capital punishment." Upon a retrial, granted for errors in the first, the second jury again found him guilty of murder in the first degree but made no recommendation to dispense with capital punishment. Upon appeal, Stroud contended that he had been put in double jeopardy when the trial court allowed the issue of the death penalty to be submitted to the jury. The Supreme Court disposed of the contention by saying that each time the defendant had been convicted of first-degree murder and the jury's mitigation of the punishment to life imprisonment did not render the conviction less than one for first-degree murder. "The protection afforded by the Constitution is against a second trial for the same offense." Stroud, having invoked the action of the court which resulted in a further trial, had not been "placed in second jeopardy without the meaning of the Constitution." *Id.* at 18, 40 S. Ct. at 51, 64 L. Ed. at 110. The basis .of decision in *Stroud* was that the defendant had not twice been placed in jeopardy. The issue of due process was not raised. On the facts the decision necessarily approved an increased sentence upon retrial after appeal.

In *Murphy v. Massachusetts*, 177 U.S. 155, 20 S. Ct. 639, 44 L. Ed. 711 (1900), the defendant, convicted of embezzlement, was first sentenced to 10-15 years, including one day of solitary confinement, under a law passed *after* the crime was committed. Because this law could not apply to past offenses, his sentence was reversed after he had served two years and seven months. A new sentence of nine years and eleven months — the first day to be in solitary confinement — was imposed. The Supreme Court rejected the defendant's contention that, by the increased sentence, he had been denied due process of law and had been twice placed in jeopardy. It held the second sentence was not invalid because "it might turn out to be for a longer period of imprisonment," and "the plea of former jeopardy or of former conviction cannot be maintained because of service of part of a sentence reversed or vacated on the prisoner's own application." *Id.* at 162, 20 S. Ct. at 642, 44 L. Ed. at 715.

In *King v. United States, supra,* the Court of Appeals for the

District of Columbia, holding that a second sentence was not invalid because the first (void because it did not contain the words "at hard labor") was increased, said:

"Until a convicted prisoner receives a sentence which can withstand attack, it may be conceived that his original jeopardy continues without interruption, and that he is therefore not put in jeopardy a second time when he receives his first valid sentence. . . . A close parallel is the doctrine that when a *conviction* is reversed, the prisoner cannot complain if on a later conviction he is given a severer sentence." *Id.* at 295. *Accord, Hicks v. Commonwealth,* 345 Mass. 89, 185 N.E. 2d 739 (1962), *cert. denied* 374 U.S. 839 (1963); *Kohlfuss v. Warden of Connecticut State Prison,* 149 Conn. 692, 183 A. 2d 626 (1962), *cert. denied* 371 U.S. 928 (1962).

Notwithstanding the well-established rule stated in the foregoing cases, both Traynor, C.J., in *People v. Henderson,* 60 Cal. 2d 482, 35 Cal. Rptr. 77, 386 P. 2d 677 (1963), and Sobeloff, J., in *Patton v. North Carolina* (4th Cir.), *supra,* analogized from *Green v. United States, supra,* that when a defendant is sentenced at his first trial he is "impliedly acquitted" of a greater penalty in the event of a subsequent trial. The opinion in *Patton,* however, frankly recognizes that it is a fiction to speak of being "acquitted of a penalty." As heretofore pointed out, *Green* established only that a defendant may not be retried for murder in the first degree after his conviction of murder in the second degree has been upset on appeal.

[11]    We find in *Green* no suggestion that the first trial judge, by his sentence, divided the crime of which the defendant was convicted into two degrees — one for which the penalty he then imposed was the maximum and the other, an undefined, more atrocious degree meriting a greater penalty — and that he acquitted the defendant of the latter by sentencing him for the former. (See dissent of Schauer, J., in *People v. Henderson, supra.*) It seems too plain for argument that the punishment is not an ingredient of the offense, and that, rather than torture logic to thwart the death sentence, it would be preferable to establish a special rule for cases involving the death penalty. This is what New Jersey apparently did. *State v. Wolf, supra.*

Mr. Justice Black, in footnote 15 to the Court's opinion in *Green, supra* at 194, 78 S. Ct. at 227, 2 L. Ed. at 208, 61 A.L.R. 2d at 1128, pointed out that the case was "clearly distinguishable" from *Stroud v. United States, supra,* in that Stroud "was retried for first-degree murder after he had successfully asked an appellate court to set aside a prior conviction for that same offense." He also quoted (in

footnote 5) the following sentence from *Ball v. United States, supra:* "The (5th Amendment) prohibition is not against being twice punished, but against being twice put in jeopardy; and the accused, whether convicted or acquitted, is equally put in jeopardy at the first trial." Id. at 669, 16 S. Ct. at 1194, 41 L. Ed. at 302.

**[10]**     We reject the premise that a defendant who secures a new trial waives his right to protection from a retrial but retains a vested right in the vacated sentence as a ceiling. In our view, Haynsworth, Chief Judge, correctly stated the law in his dissent in *United States v. Walker,* 346 F. 2d 428 (4th Cir. 1965):

"When a sentence is imposed upon a defendant following a first trial, the Government may not attack it, but the defendant can. If he chooses to do so and succeeds in obtaining a retrial, he suffers no detriment from the sentence imposed after the first trial, and is entitled to no benefit from it. If his second trial results in a conviction, any lawful sentence may be imposed upon him without regard to the sentence passed after the abortive first trial.

"In that situation, of course, a heavier sentence ought not to be imposed upon a defendant because he sought vindication of his legal rights and succeeded in obtaining an order for a new trial. Judicial vindictiveness for resort to judicial processes is morally wrong, but the judge who presides at a second trial has the power and the duty to impose any sentence authorized by law, which, in light of all the facts and circumstances then known to him, other than the defendant's litigiousness, seems most appropriate and just." *Id.* at 432.

That the Fifth Amendment protection against double jeopardy has *no* application to an increased sentence at retrials was asserted in the brief for petitioner (prepared by Abe Fortas, Esq., now Mr. Justice Fortas of the United States Supreme Court), in *Gideon v. Wainwright,* 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799, 93 A.L.R. 2d 733 (1963). To reassure the Court that the overruling of *Betts v. Brady,* 316 U.S. 455, 62 S. Ct. 1252, 86 L. Ed. 1595 (1942), would not result in overwhelming jail deliveries, the attorney for petitioner said: *"First,* it must be noted that a defendant who obtains a reversal of his conviction may be retried for the offense of which he was convicted. . . . Moreover, it is possible that an even more severe sentence than that originally levied may be imposed at the conclusion of the second trial. . . ." (Citations omitted.) Brief for Petitioner, *Gideon v. Wainwright,* p. 44.

### EQUAL PROTECTION

The rationale that the "harsher" sentence imposed following a new trial violates the equal-protection clause seems to be this: The

only group of prisoners to whom "harsher resentencing" is applicable are those who successfully challenge their original convictions; the sentences of no other criminals are subject to increase even if new evidence magnifying the degree and quality of their crimes is discovered after sentence. A classification which subjects to increase only the sentences of those who have availed themselves of the right of a fair trial is arbitrary and unreasonable. *Patton v. North Carolina* (4th Cir.), *supra* at 642; *State v. Young, supra.* See *Coke v. United States, supra* at 102.

[12-14]    Under the Fifth Amendment the only persons who can ever be retried or resentenced are those whose first sentences have been imposed under valid statutes and have been vacated at their request. Obviously, a prisoner who has accepted his sentence is not in the same classification as one who has sought and obtained a second trial. A convicted defendant has the right to appeal and to assert alleged violations of his constitutional rights in post-conviction proceedings; he has the right to accept the sentence pronounced and rely upon the constitutional provision which protects him from double jeopardy. Until a prisoner's sentence is vacated, he remains in the class protected from retrial and resentence. See Comment, 20 S.C.L. Rev. 131, 133 (1968). Therefore, the two classes being dissimilar, it is not reasonable to claim a violation of the equal-protection clause because *all* those who are tried de novo assume the risk of an increased sentence at the second trial while those who never attack their sentences do not.

[15, 16]    Any attempt to subject to review or to increase the sentences of prisoners who, by appeal or post-conviction proceedings, had *unsuccessfully* sought a new trial would violate not only their right to the equal protection of the law but also their immunity from double jeopardy. So long, however, as the same rules apply to *all* those who are tried de novo, one whose sentence was increased at such a trial has not been denied equal protection because the sentences of those who have not sought retrial are not subject to increase. It is fundamental that once a right or privilege is granted it must be applied equally and indiscriminately, but when a law applies uniformly to all members of the class affected — and the classification is based on a reasonable distinction — equal protection of the laws has not been denied. *Cheek v. City of Charlotte,* 273 N.C. 293, 160 S.E. 2d 18. The constitution does not require that the same rules apply to incompatible classes.

For the reasons elaborated herein we adhere to our former decisions and affirm the judgment of the court below.

**[17]**   Although not pertinent to decision, we deem it appropriate to note that at defendant's first trial the court consolidated for judgment the counts of felonious breaking and entering and larceny and pronounced one sentence. This was permissible, but the court was not authorized "to enter a judgment in gross in excess of the greatest statutory penalty applicable to any of the counts. . . ." *State v. Austin,* 241 N.C. 548, 549, 85 S.E. 2d 924, 926. In this instance, that penalty was a maximum of ten years, G.S. 14-54, G.S. 14-72; so the eight-year excess was void. Had defendant's sentence not been vacated, he would have been entitled to his discharge upon a writ of habeas corpus when he had served the time the court could lawfully impose. In the meantime, upon either petition for certiorari or habeas corpus, we would have vacated the judgment and remanded for proper sentence with instructions that defendant be given credit for all time served.

To have effected his purpose to impose a sentence of 10-18 years, the first judge should have imposed separate consecutive sentences of 5-9 years upon each count. The consolidated judgment was an inadvertence. The point is, in this case, the *maximum* sentence pronounced by the second judge did not exceed the maximum which the first judge attempted to impose.

Affirmed.