Ruffin, C. J.
 

 It has not been denied in the argument, • that at common law it was a settled rule of evidence in England, that a person, whose name had been forged,.and whose interest supposing the instrument to be genuine, was affected by it, either as an obligation or acquittance, was not, while the instrument remained in force, a competent witness to prove the forgery. Gilb. Ev. 124. Phil. Ev. 88. 2 Strange, 728. 2 East’s P. C. 993. But it was said in the argument, that the rule was originally adopted upon the notion, now admitted to be erroneous, that the witness would, by procur
 
 *428
 
 jng the conviction of the accused, be discharged
 
 himself
 
 j an<^ ^ence it was urged that we should not enforce the rule itself. Certainly parties injured are generally competent to prove £]16 crime. But the case of forgery, though an anomaly, is certainly an exception. Although it may have been, admitted inadvertently, and upon a wrong principle, yet, as a Court administering the common law, we have no authority to abrogate a rule or an exception so perfectly settled in that law. In England, the Courts, though not satisfied with it, could not alter the rule; and it became necessary for the Legislature to interpose. St. 9, Geo. 4, c. 32. In like manner, we think legislative authority is alone competent here to change the law, which our ancestors brought with them, upon their emigration, and which became as obligatory on the judicial tribunals they established, as it continued to be on those they left behind. Besides, there have been, as it is well known, many cases in which such witnesses have been held incompetent in this State, and we feel bound not to depart from them; and therefore deem the judgment erroneous and reverse it.
 

 As this is done at the instance of the prisoner, the former verdict must be set aside entirely, and a venire
 
 de novo
 
 awarded, to re-try the whole case.
 

 Upon theform of the indictment, the Court would perhaps not be bound now to decide, since the other point disposes of the case here. But as the point may be material upon
 
 the
 
 next trial, and would, probably, soon arise in other cases, we deem it fit to state the opinion we have formed on it, with
 
 the
 
 view of settling the question. It would have been more satisfactory to us, if in the books of criminal pleading or in an adjudication, a precedent or a direct authority could have been found. We have, however, looked through the standard works on crown law, from Ld. Coke’s commentary on the statute, 5 Eliz. c. 14, in the third institute, down to Mr. Chitty’s treatise, and through many books of forms, without succeeding in finding an indictment upon these words in that statute, “shewforth in evidence,” or a rule laid down upon them. This circumstance may not perhaps be deemed so very singular, when it is remembered that the same act
 
 *429
 
 contains also the words,
 
 “
 
 pronounce and publish,” which are more extensive, and include “shew forth in evidence.” This furnishes a reason why the indictment should always be for “ pronouncing and publishing,” and none for “shewing forth in evidence;” since, although every publication is not shewing forth in evidence, yet shewing it forth in evidence is a publishing of it: Lord Coke saying that using any words, written or oral, whereby the instrument is set forth or held up as true, is “ to pronounce and publish it.” We have therefore only principle for our guide, and, being so guided, we have arrived at the conclusion that the second count is sufficient.
 

 In the first place, we adhere to
 
 Britt’s
 
 case, 3 Dev. 122, that the words “ shew forth in evidence,” refer to a judicial proceeding. The questien then is, whether the particular proceeding must be set forth at large in the indictment; or may not be shown on evidence under the general words used in the statute and in this indictment.
 

 It seems to be proper, and perhaps may be said to be necessary, where an offence is created by statute, to describe it in the indictment, whether consisting of the commission or omission of particular acts or of certain acts accompanied by a particular intent, in the words of the statute. This is certainly so, unless, for a word or phrase in the statute, another is used in the indictment, which is clearly of the same legal import, or has a broader sense including that in the statute. Of this exception,
 
 Rex
 
 v.
 
 Fuller,
 
 1 Bos. & Pul. 180, is an example. But such examples áre very rare; and on the contrary, the case of
 
 Rex
 
 v.
 
 Davis,
 
 Leach, 493, and others of that kind, shew how strictly the Courts adhere to the let < ter of the law. Finding it thus to be generally true, that, in describing the offence, the indictment must use all the words of the statute: so, on the other hand, it would seem to be equally true, as a general rule, that the indictment is sufficient, if it contain all the words of the statute. When the language of the statute is transferred to the indictment, the expressions must be taken to mean the same thing in each. There can be few instances, in which the same words thus used, ought to or can be received in a different .sense in the
 
 *430
 
 one instrument from that in
 
 the
 
 other. As it is certain that the indictment was intended to describe the offence which the statute describes, it follows, from the use of the very same language in both, that the one means what the other does ; neither more nor less. It is true that some few exceptions from this rule have been established by adjudications; but they have not appeared to us to embrace the present case. Thus, a statute may be so inaccurately penned, that its language does not express the whole meaning the Legislature had; and by construction,- its sense is extended beyond its words. In such a case, the indictment must contain such averments of other facts, not expressly mentioned in the statute, as will bring the case within the true meaning of the statute ; that is,- the indictment must contain such words as ought to have been used in the Statute, if the Legislature had correctly expressed therein their precise meaiiing. In
 
 State
 
 v.
 
 Johnson,
 
 1 Dev. 360, for example, it was held, that besides charging in the words of the act, that the prisoner, being on board the vessel, concealed the slave therein, the indictment should have charged a connexion between the prisoner and the vessel, as that he was a mariner belonging to her; because that was the true construction of the act. So, where a statute uses a generic term, it may be necessary to state in the indictment the particular species, in respect to which the crime is charged. As, upon a statute for killing or stealing “ cattle,” an indictment using only that word is not sufficient, but it ought to set forth the kind of cattle, as a horse or a cow.
 
 Rex
 
 v. Chalkeley, R.
 
 &
 
 R. 258. But where a statute makes a particular act an offence, and sufficiently describes it by terms having a definite and specific meaning, without specifying the means of doing the act, it is enough to charge the act itself, without its attendant circumstances. Thus, upon a statute making it felony to endeavor to seduce a soldier from his duty, an indictment is good, which charges such “ an endeavor,” without statingthe mode adopted.
 
 Fuller's
 
 case before cited. So, in indictments'founded on the words “pronounce and publish,” in this same statute of Elizabeth, (which are not ours), the pre
 
 *431
 
 cedents uniformly charge “ the pronouncing and publishing of the forged instrument .as true,” without stating the means
 
 by
 
 which, or the person to whom it was published. Upon the more modern English statutes against “putting off or disposing of ” forged or counterfeit money or bank notes, it is also held, that the circumstances need not be stated’.
 
 Rex
 
 v.
 
 Holden & al. 2
 
 Taunton 334. We do not perceive why the same principle does not apply to the other' words, “shew forth in evidence,” used in the act of Elizabeth, and in our act; and are not aware of any disadvantage to the prisoner from the omission to set out in the indictment the particular proceeding, in which the evideneewas offered. We agree that such a judicial proceeding must be proved; and if it be not properly proved, the prisoner can put the matter on the record by an exception, and have' the same benefit thereof on a motion to reverse the judgment, and for a
 
 venire de novo,
 
 that he could have from a motion in arrest of judgment.— Hence, we hold the second count in this indietment to bé good.
 

 Per Curiam,- New trial awarded-.-