STATE v. ANNIE TURNER.

(Filed April 30, 1907).

*Indictment—Removal of Causes—Discretion—Evidence—*
*Judge's Charge—Omission—Motive—Supreme Court—*
*Newly Discovered Evidence.*

1. The action of the Superior Court Judge in refusing to remove a cause to another county for trial is not reviewable under the Revisal, sec. 427.

2. Under an indictment as accessory before the fact it is competent for counsel to ask the witness, "What seemed to be and what was the relation between the principal and the defendant?" such being a matter of common observation, and not calling for expert testimony.

3. It is not necessary to prove motive for the commission of crime, though when circumstantial evidence is relied on to prove the commission of the offense it is competent for the State to show motive.

4. In a trial under an indictment, the omission of the trial Judge to charge upon any particular phase of the evidence is not reviewable in the absence of a prayer for special instruction thereto, and such is true when he fails to charge upon the view of there being no evidence of motive to commit the crime alleged.

5. In criminal cases the Supreme Court has no power under the Constitution nor at common law to entertain a motion for a new trial on the ground of newly discovered evidence.

CONNOR, J., dissenting; WALKER, J., concurring in dissenting opinion.

CRIMINAL ACTION, tried before *Moore, J.,* and a jury at the December Special Term, 1906, of the Superior Court of ALAMANCE County. Pertinent facts are stated in the opinion of the Court.

*Assistant Attorney-General* for the State.
*Jacob A. Long* for defendant.

143—41

CLARK, C. J. The prisoner was convicted and sentenced to the State's Prison as accessory before the fact to Henry Walker, who had been convicted of burglary with assault with intent to murder L. Banks Holt at Graham.

The first exception is to the refusal of the motion to remove the cause to another county for trial. Revisal, 427, provides that the Judge shall not remove any cause, whether civil or criminal, unless he "shall be satisfied that the ends of justice demand it." His action is not reviewable. *State v. Smarr*, 121 N. C., 672.

The second exception is to the admission of the question, "What seemed and what was the relation between Henry Walker and the prisoner?" It was competent to show that these relations were friendly and intimate, and being a matter of common observation and experience, it was not a matter requiring that the witness should be an expert in order to express his opinion. It was a fact based on observation, as much so as the state of the weather, whether the temperature was cold or warm, whether a person was angry, is insane, and similar matters. This is because no better evidence can be had than the observation of eye-witnesses, and the jury must draw their conclusion from the evidence. 1 Elliott Ev., sec. 671, prop. 4; *Blake v. State*, 73 N. Y., 586; *McKee v. Nelson*, 4 Cowen, 355. The opinion of witnesses in such matters is the result of many observations, which cannot be detailed to the jury. 1 Elliott Ev., 547.

The third and fourth exceptions are that the Court did not charge the jury that there was no evidence tending to show that the prisoner had any motive to commit the crime. The Judge was not asked to so charge. *Patterson v. Mills*, 121 N. C., 258, and cases there cited. Besides, it was not necessary to prove motive for the commission of crime — *State v. Adams*, 136 N. C., 617; *State v. Wilcox*, 132 N. C., 1143—though when circumstantial evidence is relied on to

prove the commission of the offense it is competent for the
State to show motive. *State v. Green,* 92 N. C., 779; *State
v. Adams,* 138 N. C., 697. Furthermore, there were in
fact circumstances in this case from which the jury might
have inferred motive. The able charge of the Court was
fully as favorable to the prisoner as she had any right to
ask.

The prisoner files a motion here for a new trial for newly-
discovered evidence, on the ground that Henry Walker, who
was one of the witnesses against the prisoner, on the scaffold
retracted his evidence. As he at the same time withdrew his
confession of his own guilt made after his conviction and
denied all knowledge of the crime of which he had been con-
victed upon evidence which was conclusive to the jury that
convicted him, to the trial Judge and to the Governor, such
hearsay retraction as to the prisoner should not carry more
weight with the Court than his sworn statement at the trial
and cross-examination, especially in view of the evidence of
other witnesses that the prisoner took the key out of the
door, by use of which Walker entered the house, and that the
key was found in the lock on the outside of the door after the
shooting; that Mr. Holt had refused to sign the petition for
her husband's pardon, and her attempt to flee when arrested,
even if we could consider the motion. But this Court has
uniformly held that under the Constitution it has no power
to entertain such motions in criminal cases, and has no
desire to assume a function which can be more efficiently
performed by the Executive. The authorities and the rea-
sons governing us are too recently set forth in *State v. Lillis-
ton,* 141 N. C., 863-869, to require their repetition here.
The jury did not act solely upon the testimony of Walker,
for it acquitted the co-defendant of the prisoner, who was
also implicated by his testimony.

STATE *v.* TURNER.

At common law there was no appeal in any criminal case, the sole remedy being by application to the Home Office, which is equivalent to the application to the Governor here. To this day, this is still the law in England. Our Constitution has changed this only to allow an appeal for error of law below, "on any matter of law or legal inference." The organic law did not change the common law further so as to give criminals an appeal upon the facts, and did not allow us to review them upon affidavits as to facts not submitted to the jury. We have no right, as this Court has always held, to assume a power which the Constitution has left, as at common law, with the Executive Department. It is unnecessary for us to review the facts.

This Court is created by the Constitution, and has no powers not therein stated. If "inherent right" is invoked, it cannot go beyond that possessed by the courts at common law.

No Error.

CONNOR, J., dissenting: I am aware that it is becoming in a Judge, who has once expressed his dissent from the decision of a question, to acquiesce and regard the decision as settling the law. I should not depart from this course in the present case but for my deep conviction that, by following what, with the utmost deference, I think an erroneous precedent, we are depriving a person charged with a grave crime of an opportunity to have her cause submitted to a jury with the light thrown upon the accusation, to which she is entitled.

The defendant was convicted of a most atrocious crime upon the testimony, principally, of a self-confessed burglar and, but for an accidental failure to accomplish his purpose, a murderer, under sentence of death. While there is in the record some testimony the truth of which cannot be

questioned, but, being admitted, standing alone, is barely sufficient to raise a suspicion of guilt, the only direct, positive testimony against the defendant comes from Henry Walker. Without undertaking to point out the ear-marks of falsehood and the improbability of truth in his testimony, or the peculiar circumstances under which it was given, it may be conceded that it constituted evidence fit to be submitted to the jury and, of course, if believed, justified conviction. Nor can it be denied that if she is guilty her punishment is but reasonable and just.

This Court, in a number of cases, the last being *State v. Lilliston*, 141 N. C., 857, has held that while, in a civil action, it has the power to grant a new trial for newly-discovered evidence, it has no such power in a criminal case. The cases in which the motion has been made were reviewed in *Lilliston's case*. I confess that, after examining them, I am unable to see or to understand wherein the distinction is found which permits and, upon this record, would make it our duty to grant this defendant a new trial if she had been cast in a civil action, involving the title to a tract of land or personal property of an insignificant value, denies the power to do so when she stands convicted of a crime followed by a sentence of imprisonment at hard labor for life. It is not claimed that any statute confers the power in one case and withholds it in the other. The Constitution confers the jurisdiction to hear and determine civil and criminal appeals in exactly the same terms. I am impressed with the fact that in almost every case in which the motion has been denied for want of power the Court has thought proper to say that there is no merit in the case made out by the affidavits, and that, upon the showing made, the motion would not be granted in a civil case. I cannot but think that the learned Judges felt that it was well to strengthen the position by the last reason. I say this with all possible

respect. *State v. Jones,* 69 N. C., 16, was a petition to re-hear; the question which we have here was not presented. *Justice Reade,* while denying the petition, said that, upon considering the defense set up, it was apparent that it could not have availed the defendant.

In *Starnes' case,* 97 N. C., 424, usually relied upon to sustain the denial of power, the facts as disclosed are that at February Term, 1886, the motion was denied upon the authority of *Jones' case, supra.* At the next term of the Superior Court of Union County, when the prisoner was called to the bar for sentence, as the law then required, he made the motion in that Court, filing affidavits to sustain it. The Judge found, among other facts, that the newly-discovered testimony was "cumulative merely," and for *that reason,* "in deference to the adjudication of the Supreme Court," denied the motion, and the prisoner appealed. *Smith, C. J.,* says: "Without stopping to inquire whether, at this late stage in the proceeding, and after an unsuccessful appeal to the Supreme Court upon alleged errors, in law such an application can be entertained in the Superior Court, to whose jurisdiction the cause has been remitted, we proceed, as did the Judge who assumed the right to act upon the application, to consider the case upon its merits, as if made in due and apt time and to a court having jurisdiction." The learned *Chief Justice,* not willing to send the prisoner to his death upon the mere denial of power to grant relief, proceeds to carefully analyze the affidavits and rest his judgment upon the elementary proposition that a new trial will not be granted for newly-discovered evidence which is "cumulative merely." He concludes his opinion with a strong commendation of "the zeal, ability and persevering energy" of counsel assigned by the Court without fee. Their zeal was rewarded by a pardon for their client upon the ground that the newly-discovered evidence disproved his guilt.

This case falls far short of "closing the question." *State v. Rowe,* 98 N. C., 629, is decided upon the authority of *Jones'* and *Starnes' cases,* as is *State v. Edwards,* 126 N. C., 1051. *Council's case,* 129 N. C., 511, was a petition to rehear. Prisoner was convicted of a capital felony and sentenced to death. This Court in a *"Per Curiam* opinion" affirmed the judgment. *Douglas, J.,* ordered the petition docketed. While it was dismissed because it was held that the Court had no power to grant it, the merits of the petition were discussed, the learned Justice saying: "Though the petition to rehear must be dismissed, we have discussed the objection, as has sometimes been done where an appeal is dismissed." *Douglas, J.,* dissented, saying: "Knowing that rehearings are constantly granted in civil cases, and finding no distinction between civil and criminal actions, either in the statute or the rules of the Court, I am unwilling to say, even by implication, that property is more valuable than life and liberty or entitled to a greater degree of protection." I take the liberty of appropriating and making my own the foregoing language, expressing, as it does, my convictions. *Register's case,* 133 N. C., 746, is disposed of by a simple reference to those cited. Not until *Lilliston's case, supra,* is any discussion to be found of the question or other reason given than that it is so decided. In that case an exceedingly well-considered and interesting written argument was filed, tracing the history of the judicial system of the State from its foundation, showing from the language of the statutes what power and jurisdiction was conferred upon the courts, Superior and Supreme. In that case the defendant's motion was met with an uncontradicted affidavit, showing that he knew, prior to the trial, of the evidence upon which he relied. This, of course, made it the duty of the Court to decline the motion, and while the question was somewhat discussed and the power denied, the *Chief Justice* gave this

as an additional reason for denying the motion. The case before us is absolutely free from such complications. Walker was convicted of burglary and sentenced to be hanged. He made statements implicating the defendant and another woman as accessories before the fact. He was respited, for the purpose of enabling the State to have his testimony upon their trial. His testimony, if true, made both the women guilty. There was positive, direct, and, except by Walker, uncontradicted testimony, contradicting his evidence. Much of it was from disinterested witnesses and went to the vital question in the case in regard to which he was not corroborated. While I do not wish to discuss the testimony, it is but proper to say that I do not understand it after reading it carefully twice, as set out in the opinion. I do not find any testimony, except Walker's, other than an inference that she took the key out of the door; nor do I understand Mr. Holt's testimony to be that he refused to sign the petition for her husband's pardon. On the contrary, he says that he told her that if the Judge and jury would sign it, he would do so. This incident makes an entirely different impression on my mind from that drawn in the opinion. It not only shows the kindly feeling existing between Mr. Holt and the defendant, but explains her trip to Burlington the night of the shooting. Her husband had been convicted of an assault and sentenced to the roads. This fact is not claimed to have any connection with the shooting of Mr. Holt—he had nothing to do with it. Nor do I see anything in her conduct referred to "as an attempt to flee" inconsistent with innocence. It is impossible to analyze the testimony, and I only make this reference to it to say that if I understood it as stated in the opinion I should promptly refuse her motion without regard to the question of power.

The jury acquitted the other woman, Fannie McCain, and convicted the defendant. It is not proper for me to comment

upon this fact and I have no inclination to do so. The defendant, a colored woman, evidently without friends or influence, has been imprisoned since her conviction. The motion for a new trial is based upon the affidavit of the Sheriff who executed Walker. He says: "That affiant heard the said Henry Walker, as he stood upon the scaffold with the rope around his neck and his feet and hands confined, just before he was hanged, and when asked by affiant if he desired to say anything before his execution, say with great earnestness and with repeated statements that Annie Turner and Fanny McCain had nothing to do with the shooting of Mr. L. Banks Holt or with entering the house—that neither of them knew anything about it whatever; that he had sworn that they had tried to persuade him to shoot Mr. Holt because he thought that it would prolong his life, and that all that he had said about them was false in every particular. He further denied that he had shot Mr. Holt and that he knew anything about it one way or the other." Three other persons filed affidavits corroborating that of the Sheriff. Here we have a case in which every condition required by the courts for granting a new trial for newly-discovered testimony is met. The newly-discovered evidence is material, would probably result in a different verdict, is not cumulative merely, and could by no possibility have been known to defendant until January 8, 1907, after the adjournment of the Court at which she was tried. The newly-discovered evidence comes with, what is declared by the law, as much solemnity as if made under oath. It is a dying declaration. While it is not my purpose to discuss the merits of the defendant's case, I am impressed with what is said by counsel in Pegram v. King, 9 N. C., 605: "The simple statement of the case shows there must be relief somewhere." In that case (9 N. C., 295), on a motion to dismiss a bill to set aside a judgment and grant a new trial because the principal

witness "upon his death-bed" said that the evidence which
he had given upon the trial was untrue, the Court said:
"It resembles those cases where the principal witness on a
trial at law has been afterwards convicted of perjury in his
evidence in that case. In such cases relief should be granted
in some way or other." When the cause came on for hearing,
upon argument by Gaston for and Ruffin against granting
relief, *Taylor, C. J.,* said: "And in a court of equity if new
evidence is discovered which could not possibly be made
use of in the first trial the Court will interfere. No evi-
dence could have been given of the dying declarations of
Jenks, wrung from him in an agony of remorse when he had
no motive to misrepresent." It is true that the witness
Walker, as a part of his dying declaration, denied his own
guilt. This would, however, go to the value to be attached
to his declaration regarding the innocence of the defendant.
It is said that for a miscarriage of justice, such as indicated
here, the defendant can apply to the Governor for pardon.
I think that, so long as the cause is pending in the courts,
there should be, and is, power in the judicial department to
secure a fair, impartial trial. It is not pardon, but justice
that the defendant asks. She insists that she is not guilty
and that her conviction has been accomplished by the perjury
of the principal witness, and that she is entitled to be tried
in the light of his confession made on the gallows. To the
suggestion that her relief is in executive clemency, I find no
more conclusive answer than is given by *Douglas, J.,* in
*Council's case, supra:* "The argument that in criminal
cases the pardoning power of the Governor fulfils the purpose
of a rehearing, is purely *ab inconveniento* and, to my mind,
does not meet the ends of justice. Pardon is an act of mercy;
and so far from establishing the innocence of any one, pre-
supposes his guilt. The Governor may restore him to his
liberty, but not his character. What a defendant asks in a

rehearing is that he may have a fair trial, and yet, no matter how clearly his innocence may appear, nor how great the error we ourselves may have committed, we can give him no relief." In a case like this, the Governor can be asked to pardon only because he believes the party not guilty. A new trial only gives the defendant an opportunity to have another jury, with the additional light, pass upon the question of his guilt. If this defendant is guilty of the crime charged, there is nothing in the case appealing to executive clemency. If she is not guilty, she does not need it. I fully concur in the wisdom of the principle that new trials in either civil or criminal cases should for newly-discovered evidence be granted with the utmost caution and only in a clear case. Under our rule no argument will be heard upon the motion. It is not probable, and I hope not possible, that another case appealing so strongly to the Court for a re-examination of the rule denying relief will come to us. That the motion is renewed after the repeated denial of power indicates that the profession, usually so ready to acquiesce in the decisions of the Court, does not give its assent to the conclusion reached upon this question. As for myself, "having fully stated what, in my opinion, is the correct principle of law, as it should have been declared, henceforth this decision shall be the law with me." *Walker, J.,* in *Hoggard v. Jordan,* 140 N. C., 619.

WALKER, J., concurs in the dissenting opinion.