STATE v. NAT VILLIAM WRIGHT

No. 15

(Filed 9 April 1969)

1. Criminal Law §§ 26, 135— double jeopardy — capital cases — life imprisonment at first trial — retrial

Where defendant was awarded a new trial by the Supreme Court after having been tried for the capital crime of rape and found by a jury to be guilty of rape with a recommendation of life imprisonment, the court at defendant's retrial properly denied defendant's plea in abatement by which he contended that he should not again be tried for his life, defendant having waived his protection against reprosecution for the same offense by his appeal and the vacated sentence not being a ceiling for punishment upon retrial.

2. Criminal Law §§ 76, 178— former appeal — admissibility of confession — law of the case

Where on former appeal of this case the Supreme Court passed upon the admissibility of inculpatory statements allegedly made by defendant to police officers, reconsideration by the Supreme Court of the admissibility of such statements at defendant's retrial is precluded by the doctrine of law of the case where the evidence relating to the admission of the statements in the retrial is substantially the same as that at the previous trial.

3. Criminal Law § 76— determination of admissibility of confession

The findings of fact by the trial judge upon the *voir dire* as to the admissibility of defendant's inculpatory statements to police officers, being supported by competent evidence, are binding on appeal and *are held* sufficient to support the court's conclusion that the statements were freely, voluntarily, knowingly and intelligently made.

**4. Rape § 5— sufficiency of evidence**

In this rape prosecution, defendant's motion for nonsuit is properly denied where the State's evidence tends to show that a rape was committed on the prosecutrix, that window screens were removed and prosecutrix' house was entered on the night of the alleged rape, that defendant admitted to police officers that he removed window screens from the house occupied by prosecutrix, entered the house and placed his hand upon the body of a woman lying on a bed, that a month after the alleged rape defendant was arrested on a peeping tom charge approximately two and one-half blocks from prosecutrix' house, and that when arrested defendant was wearing a baseball cap and galoshes similar to those described by prosecutrix as worn by her assailant.

**5. Criminal Law § 112— necessity for instructions as to circumstantial evidence**

In this rape prosecution, the court did not commit prejudicial error by failing to instruct the jury as to the rule of circumstantial evidence in absence of a request for such instructions where the State's evidence consisted mainly of direct evidence of the prosecutrix and the inculpatory statements of defendant, and the only circumstantial evidence offered was incidental and corroborative.

APPEAL by defendant from *Clark, J.,* at the 28 October 1968 Regular Criminal Session of DURHAM Superior Court.

Defendant was tried under a bill of indictment charging the crime of rape upon Mrs. Naomi Marie Byrd. This is defendant's third trial on this bill of indictment. At the first trial, during the January 1968 Regular Criminal Session, Durham Superior Court, before Hall, J., the jury found defendant guilty of rape with a recommendation for life imprisonment. Defendant appealed to this Court and was granted a new trial. *State v. Wright,* 274 N.C. 84, 161 S.E. 2d 581. Defendant's second trial on this charge resulted in a mistrial because the jury was unable to reach a verdict. At the third trial, the subject of this appeal, defendant was again found guilty as charged with a recommendation for life imprisonment.

The State offered evidence which tended to show that on the night of 22 July 1967 Mrs. Naomi Marie Byrd was at her home at 1112 Taylor Street in Durham, with her husband and her two and one-half year old child. About 11:15 p.m. Mrs. Byrd retired to her bedroom. Her child was already asleep in a separate bed located in her bedroom. Mr. Byrd was asleep on a couch in the living room where he and Mrs. Byrd had been watching a television movie. All the outside doors were closed and all the windows to the house had screens which were closed and hooked.

At approximately 12:15 a.m. Mrs. Byrd awakened and saw a

man standing beside her bed. At first she thought it was her husband coming to bed. When she realized that it was not her husband and started to raise up, the man put a sharp object to the left side of her neck and said: "Hush, Hush, if you make a fuss I will kill you." The man got on the bed and said, "Open up, open up." At this time the man had sexual intercourse with Mrs. Byrd. She was afraid for her child and her husband. After it was over and the man kept lying there for a second or two, Mrs. Byrd told him that, "My husband is going to get up early and go fishing." The man said, "O. K." and got up and walked out of the bedroom, straight down the hall, and through the den door. The hall was lighted by a light left on in the living room. Mrs. Byrd could see that the man was colored and was wearing a light shirt, dark pants, a cap similar to a baseball cap, and some type of galoshes or boots. After the man walked out, Mrs. Byrd awoke her husband and told him that someone had been in the house. Mr. Byrd searched the house but found nobody. He then called the police. Officer Sullivan of the Durham Police Department arrived at the Byrd residence at approximately 1:40 a.m. He found Mrs. Byrd to be very upset and in an emotional state of shock and advised her husband to take her to the hospital. Officer Sullivan, during the course of his investigation, found a screen to a window in the den and a screen to the window in the bathroom removed.

Mr. Byrd took Mrs. Byrd to the emergency room at Watts Hospital, where she was examined by Dr. T. F. Atkins, a specialist in gynecology and obstetrics. The examination revealed the presence of male sperm in Mrs. Byrd's vagina. Dr. Atkins found no evidence of forceful dilation of the vaginal orifice. No bruises or abrasions were found about her pelvis, and no abrasions were found on the left side of her throat.

On 20 August 1967, at 1:50 a.m., defendant Nat Villiam Wright was arrested on a peeping tom charge approximately two and one-half blocks from the Byrd residence. He was wearing a light shirt, dark pants, a baseball cap and galoshes. Wright was advised of his rights and placed in jail.

Detective Carl King of the Durham Police Department testified that at 10:00 a.m. of the same day Detective Upchurch and he questioned defendant Wright. At this point in the trial defendant requested a *voir dire* examination, whereupon the jury was excused.

On *voir dire* Detective King stated he advised defendant of his rights. Defendant then signed a standard waiver form waiving his right to counsel and agreeing to answer questions. During the ques-

tioning defendant complained of a headache and pains from an ulcerated stomach. Between 12:00 and 1:00 o'clock, defendant was placed in a line-up. According to Detective King, defendant orally consented to the line-up, but refused to sign any written waiver. Following the line-up, defendant was placed in a police car and driven to Taylor Street, where he was again questioned by Detectives King and Upchurch. While sitting in the car at Taylor Street, the street where Mrs. Byrd lives, Wright made certain incriminating statements to the detectives. After returning to the police station defendant saw his wife and his minister, Rev. Yelverton.

Rev. Frizelle Yelverton testified for defendant on *voir dire* that defendant's mental capacity was that of an eleven to twelve year old child, and that he was easily led. Rev. Yelverton further stated that "(h)e tries to please everybody. In my opinion he would do things or say things just to try to please somebody even if they weren't true." He also testified that Wright's general character and reputation in the community were good, and that he had never heard him read or seen him write.

The testimony of defendant's witness, Doris Sowell, generally supported that of Rev. Yelverton.

Defendant at this time introduced into evidence his medical report from Cherry Hospital, Goldsboro, North Carolina. The case history of the medical report stated that defendant claimed to have finished the ninth grade at age fifteen, and although he liked school, he had to stop to go to work; and that he averaged between $75 and $100 per week at his job. The objective findings of the clinical summary indicated that defendant was in good contact and that his speech was normal, except for a hesitancy due to tension; that the content of his thought was without abnormality; that he talked intelligently with perhaps a little too much philosophical discussion at times, although such discussion was not rambling or disorganized; that he was alert and tried so hard in testing that, to some extent, he handicapped his own performance; that he liked people and wanted them to approve; and that he had a mental deficiency lying in the upper moderate range, with an I.Q. of 62. There was no evidence of a thinking disorder or abnormality other than the mental deficiency indicated.

Based on the evidence offered during the *voir dire* examination the court made full and complete findings of fact and concluded that defendant's statements were "freely, voluntarily, knowingly and intelligently made" and admissible into evidence.

The examination of Detective King before the jury resumed.

King testified that while talking to defendant in the police car on Taylor Street defendant had pointed out Mrs. Byrd's house as the place he entered. According to King, defendant stated that he removed two screens from the windows of the house and entered the house through a window. He went into a room and touched a woman lying on a bed. He ran out the front door when she screamed. He did not rape her. Detective King also testified that defendant had no prior police record and that he had no attorney during the entire period of interrogation.

Detective Upchurch of the Durham Police Department testified that he had participated with Detective King in the interrogation of defendant, and his testimony tended to corroborate the testimony of Detective King.

At the conclusion of the State's evidence defendant's motion for nonsuit was denied. From a verdict of guilty with a recommendation for life imprisonment defendant appealed.

*Attorney General Morgan and Assistant Attorney General Harrell for the State.*

*E. C. Harris, Jr., for defendant appellant.*

BRANCH, J.

[1]    Defendant assigns as error the trial judge's denial of his plea in abatement by which he contended that he should not be tried twice for his life.

Defendant relies heavily on *Green v. United States,* 355 U.S. 184, 2 L. Ed. 2d 199, 78 S. Ct. 221 (1957), where the United States Supreme Court held that a defendant, charged with first degree murder but convicted of second degree murder, received an implied acquittal of the charge of first degree murder which prevented retrial on that charge because to so do would place him twice in jeopardy. Wright contends that the interpretation of *Green v. United States, supra,* by the Fourth Circuit Court of Appeals in the case of *Patton v. North Carolina,* 381 F. 2d 636 (4th Cir. 1967), prohibited the State from seeking the death penalty at his retrial when he received life imprisonment at his first trial.

To here review, in depth, the pertinent principles of law would be unnecessary repetition since they have recently been clearly and fully stated by Sharp, J., in the case of *State v. Stafford,* 274 N.C. 519, 164 S.E. 2d 371. There the Court, in rejecting the holdings of Patton, *inter alia,* stated:

All courts agree that when a defendant seeks a new trial by appealing his conviction he waives his protection against reprosecution. "[I]t is quite clear that a defendant who procures a judgment against him upon an indictment to be set aside, may be tried anew upon the same indictment, or upon another indictment, for the same offense of which he had been convicted." *Ball v. United States*, 163 U.S. 662, 672, 14 S. Ct. 1192, 1195, 41 L. Ed. 300, 303 (1896).

.  .  .

We reject the premise that a defendant who secures a new trial waives his right to protection from a retrial but retains a vested right in the vacated sentence as a ceiling.

In this case defendant was not convicted of the greater offense, nor did he receive increased punishment. Therefore, since there is no basis for this assignment of error, it is overruled.

[2] Defendant by his second assignment of error contends that the trial court erred in admitting into evidence inculpatory statements purportedly made by him.

On the former appeal of this case this Court passed on the admissibility of the inculpatory statements purportedly made by defendant and in the opinion (*State v. Wright, supra*), *inter alia,* stated:

Therefore, the questions asked by the officers and the answers given by defendant relative to removal of the screen, entry of the Byrd home through the window, and touching the woman but not raping her, became competent evidence and were properly admitted for consideration by the jury.

In the case of *State v. Stone,* 226 N.C. 97, 36 S.E. 2d 704, the defendant excepted to the refusal of the court to grant his motion for nonsuit. The exception had been before the Court on a former appeal (*State v. Stone,* 224 N.C. 848, 32 S.E. 2d 651), and the Court in the second appeal stated:

These exceptions are untenable for the reason that this case was before the Court on a former appeal (cite omitted) and the Court then said: "We think the evidence sufficient to warrant its submission to the jury." The evidence produced at this trial is substantially similar to the evidence produced at the former trial. Under these circumstances the question of nonsuit, or the sufficiency of the evidence to be submitted to the jury, the decision of the Court on the former appeal is decisive. *S. v. Lee,* 213 N.C. 319, 195 S.E. 785.

Accord: *State v. Peterson*, 226 N.C. 770, 40 S.E. 2d 362; *Jernigan v. Jernigan*, 207 N.C. 831, 178 S.E. 587. See also 5 Am. Jur. 2d, Appeal and Error, § 744, at 188 *et seq.*

The principle of "law of the case" has been specifically applied to inculpatory admissions of a defendant in other jurisdictions. The California Supreme Court considered this principle in the case of *People v. Modesto*, 66 Cal. 2d 695, 59 Cal. Rptr. 124, 427 P. 2d 788. The Court's decision concerning the application of the principle of "law of the case" is correctly stated in headnote four of the case as reported in the Pacific Reporter, viz:

> Reconsideration of admissibility of defendant's statements to police was precluded by doctrine of the law of the case where facts on which prior ruling was predicated remained unchanged.

In the case of *Pool v. Commonwealth*, 308 Ky. 107, 213 S.W. 2d 603, the Court stated:

> Appellant further contends that an error was committed in the admission of his written confession as legal evidence against himself on this trial. Under what is known as "the law of the case" rule, this written confession, just as it was set out at full length in our opinion on the first appeal, would not now be a proper subject of sound legal attack upon this second appeal.

See also *Bryant v. State*, 197 Ga. 641, 30 S.E. 2d 259.

We have carefully compared the evidence relating to the admission of inculpatory statements made by defendant in the previous trial with that in this case and we find it to be substantially the same. If there be any variance, the difference favors the admissibility of the evidence.

**[3]**    Nevertheless, because of the serious nature of this case we have again carefully considered the merits of defendant's contention. We find that upon his objection to the testimony relating to the inculpatory statements purportedly made by him, the trial judge properly held a *voir dire* hearing to determine whether the statements were in fact voluntarily and understandingly made. *State v. Conyers*, 267 N.C. 618, 148 S.E. 2d 569; *State v. Rogers*, 233 N.C. 390, 64 S.E. 2d 572. Both the State and defendant offered evidence on *voir dire* and at the conclusion of the *voir dire* hearing the trial judge made full findings of fact and concluded that defendant's statements were "freely, voluntarily, knowingly and intelligently made." There was competent evidence to support the findings of fact and these findings are binding on this Court. *State v. Gray*, 268 N.C. 69, 150 S.E. 2d 1. The findings of fact support the con-

clusions of law. For the reasons stated, this assignment of error is overruled.

[4]    Defendant contends that the court erred in failing to grant his motion for judgment as of nonsuit.

In the case of *State v. Bogan*, 266 N.C. 99, 145 S.E. 2d 374, it is stated:

> "If there be any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury." *State v. Johnson*, 199 N.C. 429, 431, 154 S.E. 730, 731. This quotation, as Higgins, J., said in *State v. Stephens, supra*, is just "another way of saying there must be substantial evidence of all material elements of the offense to withstand the motion to dismiss." 244 N.C. at 383, 93 S.E. 2d at 433. It does not mean that the evidence, in the court's opinion, excludes every reasonable hypothesis of innocence. Should the court decide that the State has offered substantial evidence of defendant's guilt, it then becomes a question for the jury whether this evidence establishes beyond a reasonable doubt that defendant, and no other person, committed the crime charged. *State v. Thompson*, 256 N.C. 593, 124 S.E. 2d 728.

Here the evidence of the prosecuting witness and the medical expert is clearly sufficient to support a jury-finding that a rape had been committed on the prosecuting witness. The admissions by defendant that he removed the screens from the windows, entered the house occupied by the prosecuting witness and her family, and placed his hand upon the body of a woman, when considered with the evidence that the screens were removed and the house was entered on the night of the alleged rape, together with the circumstances of defendant's arrest, are sufficient to permit, but not compel, a legitimate and reasonable inference that defendant was the person who committed the crime.

The trial court properly denied defendant's motion for nonsuit.

[5]    Defendant urges that the trial judge committed prejudicial error by failing to instruct the jury as to the rule of circumstantial evidence. We do not agree.

Circumstantial evidence and direct evidence are defined in the case of *State v. Blackwelder*, 182 N.C. 899, 109 S.E. 644, as follows:

> Direct evidence is that which is immediately applied to the fact

to be proved, while circumstantial evidence is that which is indirectly applied by means of circumstances from which the existence of the principal fact may reasonably be deducted or inferred. In other words, as has been said, circumstantial evidence is merely direct evidence indirectly applied.

This Court considered the defendant's exception to the trial court's failure to charge on circumstantial evidence in the case of *State v. Stevens*, 244 N.C. 40, 92 S.E. 2d 409, and there stated:

The exception to the court's failure to charge on circumstantial evidence cannot be sustained. The evidence in the case was largely direct. It consisted of the statements of the two men who actually committed the robbery. The circumstantial evidence offered was incidental to and in corroboration of the direct evidence. In the absence of special request, failure to charge with respect to circumstantial evidence was not error. *S. v. Bennett*, 237 N.C. 749, 76 S.E. 2d 42.

Here the State's evidence consisted mainly of direct evidence of the prosecuting witness and the inculpatory statements of defendant. The only circumstantial evidence offered was incidental and corroborative. Defendant did not request the trial judge to charge the jury as to circumstantial evidence.

In the trial of the case below we find

No error.