STATE OF NORTH CAROLINA v. MARIE HILL

No. 100

(Filed 7 September 1971)

**Homicide § 31; Criminal Law § 135— first-degree murder — death sentence
— remand for sentence of life imprisonment**

Pursuant to the mandate of the Supreme Court of the United States, a first-degree murder case in which the defendant received the death sentence is remanded to the superior court with direction that the defendant be sentenced to life imprisonment in the State's prison.

Justices HIGGINS and LAKE dissenting.

ON remand from the Supreme Court of the United States.

BOBBITT, Chief Justice.

At the trial of defendant, Marie Hill, at December 16, 1968 Criminal Session of the Superior Court of EDGECOMBE County, North Carolina, the jury returned a verdict of guilty of murder in the first degree and thereupon the court pronounced judgment which imposed a death sentence. Upon defendant's appeal, this Court found "No error" in the trial and judgment. *State v. Hill,* 276 N.C. 1, 170 S.E. 2d 885 (1969). On June 28, 1971, upon its consideration of defendant's petition for writ of *certiorari,* the Supreme Court of the United States entered the following order: "The petition for writ of certiorari is granted. The judgment, insofar as it imposes the death sentence, is reversed, *United States v. Jackson,* 390 U.S. 570 (1968), *Pope v. United*

371

*States,* 392 U.S. 651 (1968), and the case is remanded for further proceedings." *Marie Hill, Petitioner v. North Carolina* 403 U.S. 948, 29 L. Ed. 2d 860, 91 S.Ct. 2287 (1971).

Pursuant to the mandate of the Supreme Court of the United States, this cause is remanded to the Superior Court of Edgecombe County with directions to proceed as follows:

1. The presiding judge of the Superior Court of Edgecombe County will cause to be served on the defendant, Marie Hill, and on her attorneys of record, notice to appear during a session of said superior court at a designated time, not less than ten days from the date of the order, at which time, in open court, the defendant, Marie Hill, being present in person and being represented by her attorneys, the presiding judge, based on the verdict of guilty of murder in the first degree returned by the jury at the trial at the December 16, 1968 Criminal Session, will pronounce judgment that the defendant, Marie Hill, be imprisoned for life in the State's prison.

2. The presiding judge of the Superior Court of Edgecombe County will issue a writ of *habeas corpus* to the official having custody of the defendant, Marie Hill, to produce her in open court at the time and for the purpose of being present when the judgment imposing life imprisonment is pronounced.

Remanded for judgment.

Justice HIGGINS dissenting.

For the reasons here assigned, I am unable to join in this Court's Order directing the Superior Court to impose a sentence of life imprisonment for the offense charged.

Whatever else may be said, there is no doubt that the decision of the Supreme Court of the United States eliminates the death penalty in this case. The only question is the manner in which the State should make the substitution. May we not assume the Supreme Court of the United States will permit the State to remove the death sentence and substitute life imprisonment in the manner provided by the State's Constitution and required by its judicial decisions? The directive to this Court states "judgment insofar as it imposes the death sentence be reversed" (citing *U. S. v. Jackson* and *U. S. v. Pope)* and case remanded to the Supreme Court of North Carolina "for

further proceedings." Necessarily the further proceedings require the punishment be changed from death, as required by the trial court's judgment, to life imprisonment. Clearly the mandate to this Court contemplates "further proceedings." The mandate, therefore, is not self-executing. Otherwise there would be no necessity for "further proceedings."

In North Carolina's criminal cases the appellate court's review is limited to the determination whether errors of law were committed in the trial. When a trial has been found to be free from error, the decision so finding is certified to the trial court and relief from the judgment must be through the action of the Governor (except for certain provisions involving post-conviction review). Article III, Section 5, (6) of the North Carolina Constitution provides: *"Clemency.* The Governor may grant reprieves, commutations, and pardons, after conviction, for all offenses (except in cases of impeachment), upon such conditions as he may think proper, subject to regulations prescribed by law relative to the manner of applying for pardons. . . . " The Governor has constitutional authority, therefore, after conviction, to grant relief against all sentences except in cases of impeachment.

"Where the pardoning power is, by constitutional provision, vested in an executive officer, the courts have no jurisdiction in criminal cases to exercise a power to pardon, commute or reprieve; nor have they authority to grant immunity to one who has committed an offense, or to adopt a procedure to that end." 39 Am. Jur., Pardon, Reprieve and Amnesty, § 23. *Courts,* page 531, citing among others, *Sorrells v. United States,* 287 U.S. 435. " . . . (T)he power (to grant pardons, reprieves and commutations) . . . cannot, however, be restricted or limited by any act of the legislative or other branch of the government, in the absence of any grant of the power to restrict or limit in the constitutional provision conferring the power." 39 Am. Jur., Pardon, Reprieve and Amnesty, § 24. *Generally,* page 532.

Some of my associates have expressed the view that this case, now in the courts, is out of the Governor's hands. Surely this view is not correct. The Governor's power has its source in the Constitution. Neither the Legislature nor the courts can take it away. The prisoner stands convicted and is under sentence by the trial court for a violation of State law. The trial court imposed the sentence required by statute for the offense

charged. The sentence imposed is not vacated by any order from any court. This Court affirmed the sentence. True the Supreme Court of the United States said this Court committed error in approving the sentence and directed that the sentence of life imprisonment be substituted for the death sentence. Up to now the sentence of the trial court is on its record undisturbed. The Governor has power without appeal to reduce the sentence to life imprisonment, to a term of years, or to free her from it altogether. After conviction, the Governor has power to exercise clemency in all cases (except impeachment) on such conditions as he thinks proper. Should he not be permitted to exercise that power for the State and thus comply with the mandate? It seems apparent that the Supreme Court of the United States is not familiar with our constitutional provisions and our court procedures with respect to appellate review. I quote from a number of pertinent decisions:

*State v. Jones,* 69 N.C. 16:

"In equity cases and in civil actions the practice (of further hearing) has been common, but in criminal cases never to our knowledge. In the former cases this Court makes decrees and passes judgments, which may be reviewed. But in criminal cases we do not pass judgment. Such cases are sent up for our opinion only, which we certify to the court below, and there our jurisdiction ends."

*State v. Starnes,* 94 N.C. 973:

"In appeals from judgments rendered in indictments, our jurisdiction is executed in reviewing and correcting errors in law committed in the trial of the cause, and to this alone."

*State v. Turner,* 143 N.C. 641, 57 S.E. 158:

"But this Court has uniformly held that under the Constitution it has no power to entertain such motions in criminal cases, and has no desire to assume a function which can be more efficiently performed by the Executive."

*State v. Lewis,* 226 N.C. 249 (cited with approval, *In re Powell,* 241 N.C. 288):

"After a defendant has begun the service of his term, or at least when that takes place after the adjournment of the court, it is beyond the jurisdiction of the judge to alter it or interfere with it in any way. The power of pardon,

parole or discharge during the term of imprisonment is by the Constitution the exclusive prerogative of the Governor."

The Supreme Court of the United States sent us this directive: " . . . (It) was ordered and adjudged on June 28, 1971, by this Court that the judgment of the Supreme Court of North Carolina, insofar as it imposes the death sentence, be reversed, *United States v. Jackson*, 390 U.S. 570 (1968), *Pope v. United States*, 392 U.S. 651 (1968) ; and that this cause be remanded to the Supreme Court of the State of North Carolina for further proceedings."

In no sense can it be said that the Supreme Court of North Carolina imposed a death sentence. The rule, as stated in the cases cited, and in many others (and none to the contrary), is that the Supreme Court of North Carolina reviews criminal cases and determines whether errors of law have been committed and when the certificate goes down that the Court finds no error, relief from the judgment becomes the responsibility of the Governor. Superior Court Judges are constitutional officers. *Their sources of authority and power are the State Constitution and the Acts of the General Assembly.* A verdict of guilty of murder in the first degree (absent a recommendation the punishment be life imprisonment) requires the imposition of the death sentence. G.S. 14-17. " . . . (M)urder in the first degree . . . shall be punished with death." North Carolina Constitution, Article XI, Section 2. No other judgment is authorized. *State v. Westbrook*, 279 N.C. 18, and cases therein cited. Neither the Supreme Court of North Carolina, nor the Supreme Court of the United States is the source of a superior court judge's power. In a proper case, either may restrain the unauthorized use of the trial court's power. In criminal cases, and in situations such as now confront us, the Governor's power of clemency takes on emphasized significance. The Constitution, the State statutes and the decided cases harmonize and support the view that the authority of this Court ends when it certifies to the superior court that it finds no error in a criminal trial. At the time these cases were decided, the Court's supervisory power was precisely the same as it is today.

In my opinion no effort whatever should be made to prevent, or to delay, compliance with the Court's mandate in this case. However, in my opinion, compliance should be by order of

State v. Hill

the Governor who has the Constitutional power rather than by the Court which does not have it. The mandate thus is satisfied when the death sentence is effectively removed and a life sentence substituted. So long as the death sentence is effectively removed, the manner of removal may be by the agency of the State which has the power. To hold, as the Court now does, that only the Court can act for the State is to take a gimlet hole view of the mandate not required by its terms.

I have been taught to believe the State may regulate its judicial and other affairs as it deems proper so long as rights under the Constitution of the United States, the Acts of Congress and our treaties with foreign powers are not infringed. If this be so, the Governor's commutation complies with the mandate. I do not share the view that the Court has exclusive power to commute the sentence of the trial court.

This one further comment: In no event may the verdict be set aside and a new trial ordered. Error either in the trial or the verdict of guilty is not suggested by any court. If the verdict should be set aside without the defendant's procurement or approval, a plea of former jeopardy at another trial would present a grave constitutional question.

Since writing the above, it has come to my attention that on yesterday, September 6, 1971, in some manner not disclosed to me, there appeared in our Clerk's office and by him marked filed, a paper giving the names of the six capital cases with this order: "The Motions for leave to proceed in *forma pauperis* are granted. The petitions for writs of *certiorari* are granted. The judgments, insofar as they impose the death sentence, are reversed, *United States v. Jackson,* 390 U.S. 570 (1968), *Pope v. United States,* 392 U.S. 651 (1968), and the cases are remanded for further proceedings."

The original order reversing our decision in the case of Marie Hill is here quoted (the orders in the other five cases are similar) :

State v. Hill

"UNITED STATES OF AMERICA, SS:

THE PRESIDENT OF THE UNITED STATES OF AMERICA

To the Honorable the Judges of the
Supreme Court of the State
of North Carolina,

GREETINGS:

WHEREAS, lately in the Supreme Court of the State of North Carolina, there came before you a cause between the State of North Carolina and Marie Hill, No. 2, wherein the judgment of the said Supreme Court was duly entered on the tenth day of December A. D. 1969, as appears by an inspection of the petition for writ of *certiorari* to the said Supreme Court and response thereto.

AND WHEREAS, in the October Term, 1970, the said cause having been submitted to the SUPREME COURT OF THE UNITED STATES on the said petition for writ of *certiorari* and response thereto, and the Court having granted the said petition:

ON CONSIDERATION WHEREOF, it was ordered and adjudged on June 28, 1971, by this Court that the judgment of the Supreme Court of North Carolina, insofar as it imposes the death sentence, be reversed, *United States v. Jackson*, 390 U.S. 570 (1968), *Pope v. United States*, 392 U.S. 651 (1968) ; and that this cause be remanded to the Supreme Court of the State of North Carolina for further proceedings.

NOW, THEREFORE, THE CAUSE IS REMANDED to you in order that such proceedings may be had in the said cause, in conformity with the judgment of this Court above stated, as accord with right and justice, and the Constitution and laws of the United States, the said writ notwithstanding.

Witness the Honorable WARREN E. BURGER, Chief Justice of the United States, the twenty-third day of July in the year of our Lord one thousand nine hundred and seventy-one.

/s/ ROBERT SEAVER
Clerk of the Supreme Court
of the United States"

The mandate addressed to us ordered that our judgments, insofar as they impose the death sentence "be reversed." The

new paper filed yesterday (September 6, 1971) listing the six cases is not addressed to us or to any person. It lists six cases by number and name and then follows this: "The Motions for leave to proceed in *forma pauperis* are granted. The petitions for writs of *certiorari* are granted. The judgments, insofar as they impose the death sentence are reversed, *United States v. Jackson*, 390 U.S. 570 (1968), *Pope v. United States*, 392 U.S. 651 (1968), and the cases are remanded for further proceedings. June 28, 1971. Mr. Justice Black dissents."

My objection is that the Court now treats this special record filed September 6, addressed to no one, as the official record rather than the separate mandate in each case addressed "To the Honorable the Judges of the Supreme Court of North Carolina." I think the unaddressed paper must give way to the duly authenticated mandate addressed to us which is that our judgment "be reversed." If I am correct, this leaves an erroneous death sentence on the records of the superior court and so long as that sentence is unexpunged, the Governor's authority to commute cannot be impinged by any court.

I dissent from the order.

Justice LAKE dissenting.

I dissent from the order directing the Superior Court of Edgecombe County to enter judgment sentencing the defendant to imprisonment for life upon the verdict heretofore entered.

The defendant appealed to this Court from a judgment of the Superior Court of Edgecombe County imposing upon her the sentence of death pursuant to a verdict finding her guilty of murder in the first degree, the jury having not recommended the imposition of a sentence of imprisonment for life. Upon her appeal the defendant sought a new trial for alleged errors of law. Among the defendant's assignments of error were these:

"1. EXCEPTIONS 7, 8 and 9 (R pp 94 and 96):

"The sentencing procedure provided by G.S., § 15-162.1 of the General Statutes of North Carolina violates the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 11, 13 and 14, of the North Carolina Constitution.

"IV. EXCEPTIONS 7 and 9 (R pp 94 and 96):

"The sentence imposed upon the defendant violates the Eighth and Fourteenth Amendments to the Constitution of the United States and Article I, § 14, of the Constitution of North Carolina."

The exceptions upon which these assignments were based were as follows:

"Defendant moves to set aside the verdict on the grounds that the verdict as returned by the jury was improper. Motion denied. Defendant excepts. DEFENDANT'S EXCEPTION # 7.

"Defendant moves for a new trial because of errors in law committed during the trial. Motion denied. Defendant excepts. DEFENDANT'S EXCEPTION # 8.

"To the signing and entry of the foregoing judgment the defendant in open court objects and excepts, and gives notice of appeal to the Supreme Court of North Carolina; further notice waived. EXCEPTION # 9."

This Court found no merit in any of the defendant's assignments of error and affirmed the judgment of the Superior Court. *State v. Hill,* 276 N.C. 1, 170 S.E. 2d 885.

The Supreme Court of the United States granted the defendant's petition for *certiorari* and remanded the matter to this Court, saying only:

"The motion for leave to proceed in *forma pauperis* is granted. The petition for writ of *certiorari is granted.* The judgment, insofar as it imposes the death sentence, is reversed, *United States v. Jackson,* 390 U.S. 570 (1968), *Pope v. United States,* 392 U.S. 651 (1968), and the case is remanded for further proceedings."

The judgment of this Court, affirming the judgment of the Superior Court, has thus been reversed, "insofar as it imposes the death sentence," by the only court in all the world having authority to do so. It seems to me clear that the Supreme Court of the United States intended, by its order, to reverse, or vacate, the death sentence which had been imposed on Marie Hill by the Superior Court and affirmed by us. If so, no action by this Court is necessary to vacate that sentence, though orderly procedure would seem to indicate the entry of such judgment by us pursuant to the mandate we have received. See *D&W, Inc.*

*v. Charlotte,* 268 N.C. 720, 152 S.E. 2d 199. The sentence of death having been vacated by a court having jurisdiction to do so, and no other sentence having been imposed, it would seem necessarily to follow that there is no sentence presently in effect. The commutation power of the Governor under Article III, § 6, Clause (6), of the Constitution of North Carolina is the power to reduce a sentence then in effect, not the power to impose a sentence upon a person not then under sentence. Black's Law Dictionary; 15A C.J.S., Commutation; 39 AM. JUR., Pardon, Reprieve and Amnesty, § 8. Consequently, the commutation power of the Governor appears to afford no solution to the dilemma facing the State as a result of the reversal by the Supreme Court of the United States of the judgment of this Court. In any event, the Governor has not attempted to exercise the commutation power in this case, nor has he indicated any intent to do so. The case is again before us, on the order of remand, for further proceedings and it is necessary that this Court take some action upon it.

The matter has been remanded to this Court for further "proceedings" in conformity with the judgment of the Supreme Court of the United States. The question now before us is what proceedings will meet this test and also conform to the law of North Carolina, for neither this Court nor any other court of North Carolina has any authority not conferred upon it by the Constitution and laws of this State. We can derive no authority from any other source, not even a decree of the Supreme Court of the United States. That Court may, as in this case, set aside a judgment of this Court when, in its opinion, our judgment is in conflict with the Constitution or laws of the United States, but it cannot authorize this Court to enter a judgment which is not authorized by the law of North Carolina, and it has not purported to do so.

This Court is not authorized by the law of North Carolina to enter, or to authorize or direct the Superior Court of Edgecombe County to enter, any sentence upon Marie Hill for the crime of murder in the first degree except one which is pursuant to and in accord with the verdict of the jury, she having entered a plea of not guilty. The fact that a sentence, approved by us and in accord with the verdict, cannot be lawfully carried out does not authorize this Court to enter or to direct or approve the entry of a different sentence simply because it is believed

by us to be just, expedient and the next best thing to do with the defendant. *State v. Ruth,* 276 N.C. 36, 170 S.E. 2d 897.

The supervisory power conferred upon this Court by Article IV, § 12(1), of the Constitution of North Carolina is the power to enter orders directing other courts of the State to proceed in accordance with the law of this State, not the power to direct them to proceed as we, in our best judgment, deem just and right.

The statute, G.S. 14-17, fixing the possible sentences for the crime of murder in the first degree, the defendant having entered a plea of not guilty, is clear and explicit. It provides:

"A murder which shall be * * * committed in the perpetration or attempt to perpetrate any * * * robbery * * * shall be deemed to be murder in the first degree and shall be punished with death: Provided, if at the time of rendering its verdict in open court, the jury shall so recommend, the punishment shall be imprisonment for life in the State's prison, and the court shall so instruct the jury * * * "

The Supreme Court of the United States has not declared this statute, or any part of it, unconstitutional *per se*. It has not said that if, at the time of the offense and trial, this statute stood alone, as it now stands alone, the State may not impose and carry out a sentence of death, pursuant to a verdict such as that rendered by the jury in Marie Hill's case. All it has said is that such sentence cannot be imposed lawfully when there is also in effect a statute such as G.S. 15-162.1. We are, of course, bound by that decision. At the time of the offense with which the defendant is charged, and also at the time of her trial, both G.S. 14-17 and G.S. 15-162.1 were in effect. The subsequent repeal of G.S. 15-162.1 does not have any bearing upon the validity of the sentence heretofore imposed, nor will it make a death sentence permissible at a new trial.

The jury returned a verdict of guilty of murder in the first degree without a recommendation. Apart from the provisions of the United States Constitution, as now interpreted by the Supreme Court of the United States, let us assume that the Superior Court, in the first instance, had sentenced the defendant to imprisonment for life upon this verdict and that the validity of such sentence were properly before us on appeal. Is it not clear that we would then be obliged to hold the im-

State v. Hill

position of such a sentence was error for the reason that the sentence was not in accord with the verdict and so was not authorized by the statute? The statute makes the recommendation of the jury, at the time of rendering its verdict, that the defendant be sentenced to imprisonment for life a condition precedent to the authority of the trial judge to impose such a sentence. *State v. Ruth, supra.*

It appears to me a reasonable assumption that, had the Legislature been granted the ability to foresee how the United States Supreme Court would interpret the United States Constitution, as related to this statute and G.S. 15-162.1 in conjunction, the Legislature would have given this Court authority to direct the imposition of a sentence to life imprisonment in a case so remanded to us. However, the Legislature did not foresee such a decision by that Court and, consequently, we are left with and limited by the statute as it is.

This, then, is our dilemma upon this remand: The death sentence cannot be imposed because the United States Supreme Court has so decreed, pursuant to its interpretation of the United States Constitution as applied to the combination of G.S. 14-17 and G.S. 15-162.1. A sentence of life imprisonment cannot be imposed because the statutory condition precedent thereto has not occurred. *State v. Ruth, supra.* What now is the lawful and proper "further proceeding?"

The Supreme Court of the United States has vacated the judgment rendered in the Superior Court, and affirmed by this Court, because of what it has declared to be an error of law. That error was the result of the charge of the superior court to the jury with reference to the possible verdicts which the jury might render. Though the charge, as to the possible verdicts, was in full accord with the previous decisions of this Court, we must now regard it as an erroneous statement of the law applicable to the trial of Marie Hill on the indictment appearing in the record. When a defendant appeals to this Court from a sentence, imposed pursuant to a verdict rendered under an erroneous instruction by the trial court, and seeks a new trial, as Marie Hill did, the proper procedure is for this Court to remand the case to the superior court for a new trial.

This defendant has, in my opinion, had a fair trial. The evidence in the record before us fully supports the verdict that she is guilty of murder in the first degree. The Supreme Court of the United States has suggested nothing to the contrary. It

has, however, forbidden the State to carry out the sentence of death and has remanded the matter to us for further proceedings. This it had jurisdiction—*i.e.*, authority—to do. Therefore, its judgment is binding upon us however much we may disagree with it. So is the law of North Carolina binding upon us to the extent that it does not conflict with the Constitution and laws of the United States.

To send this case back for a new trial entails the risk of a different verdict as to guilt. The evidence at the new trial may be different, or the different jury may not believe it. That is, a new trial entails the risk of a miscarriage of justice, assuming the record now before us speaks the truth. On the other hand, if, at the new trial, another jury, properly instructed, returns a verdict of guilty of murder in the first degree with a recommendation that a sentence of life imprisonment be imposed, then it may well be said, assuming such trial is free from error, that time and expense have been wasted for no purpose except to follow the ritual of the law. I do not think this Court should take the position that to follow the mandate of the statute before imprisoning a person for life is a waste of time and money, but, if it be such, I nevertheless see no other procedure which conforms both to the decree of the United States Supreme Court and to the law of North Carolina. Being bound, in this case, to follow both, I feel compelled to dissent from the entry of an order by this Court directing the Superior Court of Edgecombe County to sentence Marie Hill to imprisonment for life upon the verdict heretofore rendered. It is my view that this case must now be remanded to the Superior Court for a new trial because of the error in instructing the jury as to the possible verdicts it might render. *State v. Ruth, supra.*

To hold that the Superior Court erred in instructing the jury that it might return a verdict of guilty of murder in the first degree without recommending that she be sentenced to imprisonment for life, in which event the Court would impose the death sentence, and to order a new trial because of this error, would not violate the constitutional prohibition against double jeopardy. The defendant, in her appeal to this Court, asked for a new trial. As Justice Sharp said in *State v. Stafford*, 274 N.C. 519, 164 S.E. 2d 371:

"All courts agree that when a defendant seeks a new trial by appealing his conviction he waives his protection

State v. Hill

against reprosecution. '[I]t is quite clear that a defendant who procures a judgment against him upon an indictment to be set aside, may be tried anew upon the same indictment, or upon another indictment, for the same offense of which he has been convicted.' *Ball v. United States,* 163 U.S. 662, 672, 16 S.Ct. 1192, 1195, 41 L. Ed. 300, 303 (1896)."

This statement was quoted with approval in *State v. Wright,* 275 N.C. 242, 166 S.E. 2d 681, *cert. den.,* 396 U.S. 934. To the same effect, see: *State v. Case,* 268 N.C. 330, 150 S.E. 2d 509; *State v. Hollars,* 266 N.C. 45, 145 S.E. 2d 309; *State v. Gainey,* 265 N.C. 437, 144 S.E. 2d 249; *State v. Anderson,* 262 N.C. 491, 137 S.E. 2d 823; *State v. White,* 262 N.C. 52, 136 S.E. 2d 205; *State v. Correll,* 229 N.C. 640, 50 S.E. 2d 717, *cert. den.,* 336 U.S. 969; *State v. Williams,* 224 N.C. 183, 29 S.E. 2d 744, aff'd, 325 U.S. 226, rehear. den., 325 U.S. 895; *State v. Stanton,* 23 N.C. 424; 21 Am. Jur. 2d, Criminal Law, § 209.

In *North Carolina v. Pearce,* 395 U.S. 711, 719, 89 S.Ct. 2072, 23 L. Ed. 2d 656, 666, the United States Supreme Court reaffirmed *Ball v. United States, supra,* saying:

"At least since 1896, when *United States v. Ball [supra]* was decided, it has been settled that this constitutional guarantee imposes no limitations whatever upon the 'power to *retry* a defendant who has succeeded in getting his first conviction set aside. 'The principle that this provision does not preclude the Government's retrying a defendant whose conviction is set aside because of an error in the proceedings leading to conviction is a well-established part of our constitutional jurisprudence.' *United States v. Tateo,* 377 U.S. 463, 465, 12 L. Ed. 2d 448, 450, 84 S.Ct. 1587. * * *

"We think those decisions are entirely sound, and we decline to depart from the concept they reflect."